# Baumgartner v. Pennsylvania R. R., Appellant.

*Negligence—Railroads—Interstate commerce—Master and servant — Assuming risk — Death by carbon monoxide gas — Duty of master—Federal Employers' Act of April 22, 1908, 35 Stat. 65, c. 149—Fellow servant.*

1. An employer is presumed to be familiar with the dangers, latent as well as patent, ordinarily accompanying the business in which he is engaged.

2. Where a danger is known to the master, but not to the servant, the duty is imperative on the master to give warning of such danger to the servant.

3. Where an employee is exposed to carbon monoxide gas in the course of his work, the master is bound to inform him of its deadly poisonous character, and to protect him against its danger.

4. Where an employee has no knowledge of a danger to which he is exposed, it cannot be charged that he assumed the risk of such danger.

5. Under the Federal Employers' Liability Act of April 22, 1908, 35 Stat. 65, c. 149, a carrier is liable for an injury caused by the negligence of a fellow servant.

*Negligence—Death by poisonous gas—Expert testimony—Conflict of testimony.*

6. In a negligence case where it is alleged that death resulted from inhalation of carbon monoxide gas, and three medical experts for plaintiff testify that it did, and three experts for defendant testify that it did not, the case is for the jury.

*Appeals—Setting aside of verdict—Oral testimony.*

7. The appellate court cannot set aside a verdict because of doubt as to the credibility of oral testimony.

Argued November 30, 1927.   Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 131, March T., 1927, by defendant, from judgment of C. P. Allegheny Co., Jan. T., 1925, No. 1280, on verdict for plaintiff, in case of Grace Sharp Baumgartner v. Pennsylvania Railroad Co.   Affirmed.

Trespass for death of plaintiff's husband.   Before REID, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $10,000.   Defendant appealed.

*Error assigned* was refusal of judgment for defendant n. o. v., quoting record.

*Robert D. Dalzell,* of *Dalzell, Fisher & Dalzell,* for appellant.—The burden is on plaintiff to make out a clear case on which to rest his medical testimony: Mudano v. P. R. T., 289 Pa. 51.

Plaintiff alleges, as evidence of negligence, a failure to warn.

Under common sense as well as legal precedents, knowledge on part of master is presupposed: Martin v. Niles-Bement-Pond Co., 214 Pa. 616.

The burden of proof is on plaintiff: Mulligan v. Traction Co., 241 Pa. 139; Zenzil v. R. R., 257 Pa. 473; Cawley v. R. R., 44 Pa. Superior Ct. 340.

*H. Fred Mercer*, for appellee.—The evidence that death was caused by carbon monoxide is positive: Fritz v. Tanning Co., 258 Pa. 180.

The railroad company took this man from the tube works. He never worked in an ash pit before. Without any warning they sent him into that ash pit where carbon monoxide gas had affected other employees. No warning was given. Defendant there created the gas that caused the employee's death. They were under a duty to warn. They admit they did not. In this the railroad company was clearly negligent: Chesapeake & Ohio R. R. v. Profitt, 241 U. S. 462, 468; Wagner v. Chemical Co., 147 Pa. 475; McCray v. Varnish Co., 7 Pa. Superior Ct. 610.

The negligence of the coemployee is attributable to the company. His act is the railroad's act, and under the Employers' Liability Act of 1908 his negligence renders the railroad company liable: Grand Trunk Western Ry. Co. v. Lindsay, 233 U. S. 42; Chicago & N. Ry. v. Gray, 237 U. S. 399; Stavros v. R. R., 186 N. W. 942.

The master failed to supply a reasonably safe place in which to work.

OPINION BY MR. JUSTICE WALLING, January 23, 1928:

While in defendant's employ, on November 19, 1922, Charles Baumgartner was fatally stricken and died in a few hours. This suit, brought by his widow as administratrix, under the Federal Employers' Liability Act (Act of April 22, 1908, 35 Stat. 65, ch. 149), charging negligence on part of defendant as the cause thereof, re-

sulted in a verdict and judgment for plaintiff and defendant has appealed.

Assuming, as we must in support of the verdict, the truth of the evidence for plaintiff and every inference fairly deducible therefrom, the record discloses no cause for reversal. The interstate character of the occurrence was admitted. Under one of defendant's tracks at Washington, Penna., there was an ash pit, forty-five feet long, forty-five inches wide and forty-two inches deep. It was open at the top except a third rail for narrow gauge cars, and three metal cross ties. Live ashes, including burning coal, red hot clinkers, cinders, etc., were dumped therein from engines standing over. As the engines moved on the ashes were drenched by means of a hose, then shoveled onto the platform and from there into a car. It was one of Baumgartner's duties to assist in shoveling the ashes. As he finished this work on the day above stated he lapsed into a semi-unconscious condition, and died some hours later. He was a man thirty years old, in good health, and this case was based on the contention that he was fatally poisoned by carbon monoxide gas, arising from the hot ashes. It is a well known fact by those familiar with the subject that such gas is deadly poison, and is generated, inter alia, by imperfect combustion, especially of coal. Water sprinkled on live coal ashes, sufficient to check but not to fully extinguish the fire, will sometimes cause the poison gas to arise in sufficient quantities, if inhaled, to cause death. Carbon monoxide gas is more dangerous because its presence cannot be detected by sight, taste or smell. When a sufficient quantity is taken into the lungs, it causes death by a destruction of the red blood corpuscles. It was the duty of a coemployee named Bebout to drench the ashes so thoroughly as to fully quench the fire before attempting their removal; but there is evidence that on the occasion in question there was a partial failure to perform this duty and that the ashes, piled to the depth of eighteen inches, were shov-

eled while steaming. When engaged in this work Baum-
gartner's face was over the ashes, so he naturally inhaled
the released gas. He was a common laborer, had been
working for defendant ten weeks, but had received no
instruction as to the proper performance of the work or
of the danger to which he was subjected, and, as far as
appears, had no knowledge thereof. The gas in ques-
tion is a trifle lighter than air and in general when the
latter circulates freely it will dissipate the former so as
to avoid danger; but, as the pit was located between an
embankment and a hill, sometimes the air was not ac-
tive there. Experiments made by plaintiff's experts
after the occurrence disclosed gas there in fatal quan-
tities, while those made by defendant's experts did not.

The suggestion that defendant was ignorant of the
fact that burning coal ashes would, under certain condi-
tions, give off carbon monoxide gas is untenable. The
evidence contains no such averment and the master is
presumed to know the nature and qualities of the mate-
rials he places in the hands of his servants. In other
words, he is presumed to have such knowledge of mat-
ters pertaining to his business as is possessed by those
having special acquaintance with the subjects involved.
For example, a master placing dynamite in the hands
of his servants is bound to know its dangerous character
by reason of liability to accidentally explode and his
ignorance thereof is no defense. See Tissue v. Balti-
more & Ohio R. R. Co., 112 Pa. 91, 98. An employer is
presumed to be familiar with the dangers, latent as well
as patent, ordinarily accompanying the business in
which he is engaged.

Assuming as we must at this stage of the case, that
the situation was one of danger, known to the master
but not to the servant, then the duty of the master to
give warning was imperative. "On the other hand, it is
equally well settled that an employer is bound to exer-
cise reasonable precaution against injury to his em-
ployees while they are in his service and obeying his

orders.   Not only must he provide suitable implements and means with which to carry on the business which he sets them to do, but he must warn them of all the dangers to which they will be exposed in the course of their employment, except those which the employee may be deemed to have foreseen as necessarily incidental to the employment in which he engages, or which may be open and obvious to a person of his experience and understanding, and except, also, such as the employer cannot be deemed to have foreseen.   And the employer will be presumed to be familiar with the dangers, latent as well as patent, ordinarily accompanying the business in which he is engaged": Wagner v. Jayne Chemical Co., 147 Pa. 475, 479.   In the case just cited a recovery was sustained by a servant for injuries suffered by inhaling fumes from nitric acid.   A recovery was also sustained in Fritz .v. Elk Tanning Co., 258 Pa. 180, where plaintiff was injured by poisonous fumes arising from the vats in the bleach room of a tannery.   See also Bannon v. Lutz, 158 Pa. 166; McCray v. Varnish Co., 7 Pa. Superior Ct. 610.   "If, by reason of the nature of an employment, transitory conditions arise which at times render the employment hazardous, and which the servant cannot anticipate by reason of his ignorance, an employer should give warning of the danger": Reardon v. Byrne, 195 Mass. 146, 80 N. E. 827, 829; Murray v. Houston Car Wheel, etc., Co., 222 S. W. (Tex.) 219. "It is the duty of the master to warn and instruct his servant as to defects and dangers of which he knows, or ought, in the exercise of reasonable care and diligence, to know, and of which the servant has no knowledge, actual or constructive; prima facie this duty requires the master to warn and instruct the servant with reference to all abnormal or unusual, peculiar or extraordinary risks or hazards of the employment, and, where the business is complex or dangerous in its nature, the master is bound to point out to servants the particular de-

fects and dangers incident thereto": 39 C. J. 486, par. 602.

Carbon monoxide poisoning cannot be regarded as something outside of the range of human experience. One of defendant's experts testified to having treated over two thousand cases during the past eighteen years. That defendant knew the dangers here involved may be inferred from the fact that it gave other employees strict orders not to remove the ashes until after the fire therein had been entirely extinguished. As the deceased had no knowledge of the danger to which he was exposed, it cannot be urged that he assumed the risk.

That the immediate cause of the death in question resulted from the act of a coemployee in neglecting to completely extinguish the fire before removal of the ashes is no defense under the Federal Employers' Liability Act, which expressly provides that the carrier shall be liable for the death of an employee resulting from the negligence of any of the officers, agents or employees of such carrier: see Grybowski v. Erie R. Co., (N. J.), 95 Atl. 764; also Kanawha Ry. v. Kerse, 239 U. S. 576. Neither is contributory negligence a defense although it reduces the damages (Grand Trunk Ry. v. Lindsay, 233 U. S. 42); as to this the jury was properly instructed.

There was a conflict in the expert evidence as to whether Baumgartner's death resulted from the inhalation of the carbon monoxide gas. Plaintiff's three experts affirmed that it did and defendant's three expressed a contrary opinion. Under this state of the evidence the question was clearly for the jury. "Where there is a substantial conflict in the evidence as to whether death resulted from carbon monoxide or some other cause, the question is necessarily for the jury": Davies v. Rose-Marshall Coal Co., 74 Wash. 565, 134 Pac. 180. See Flaherty v. Scranton Gas Co., 30 Pa. Superior Ct. 446. At least some of plaintiff's experts

went beyond the expression of an unqualified opinion (sufficient under our decisions: see Vorbnoff v. Mesta Machine Co., 286 Pa. 199) and definitely gave carbon monoxide poison as the cause of death. The proof was to the effect that the undertaker found the arteries of the deceased full of fluid blood (cherry red) which according to some of the experts was a demonstration that carbon monoxide poison caused the death. In addition, there was evidence that the pupils of the eyes were like pin points and that there were blotches about the neck, both corroborative of the same conclusion. Baumgartner's age and prior health rendered improbable the theory of death from an apoplectic stroke, although carbon monoxide poisoning will sometimes cause a brain lesion, resulting in paralysis. The rule announced in Mudano v. Phila. Rapid Transit Co., 289 Pa. 51, that a case depending on opinion evidence cannot be established where one of plaintiff's two experts expresses a favorable opinion and the other an opinion directly to the contrary, has no application here, for there was no substantial conflict among plaintiff's experts.

There was no such glaring contradictions in the testimony of any witness as to render a finding thereon a mere guess. Furthermore, the case did not depend on the evidence of any one witness. Appellant's searching analysis of the evidence for plaintiff went to its credibility, but that was for the jury. We cannot set aside a verdict because of doubt as to the credibility of oral testimony. The only error assigned is the trial court's refusal to enter judgment for defendant non obstante veredicto, and that cannot be sustained.

The judgment is affirmed.