JUDITH SPARLING, Plaintiff-Appellee, v. PEABODY COAL COMPANY, Defendant-Appellant.

(No. 71-97; ▮▮▮▮▮▮)

Fifth District—December 17, 1973.

*Rehearing denied January 28, 1974.*

302

G. MORAN, P. J., dissenting.

Pope and Driemeyer, of East St. Louis (W. Thomas Coghill, Jr., of counsel), for appellant.

Carr & Raffaelle, of East St. Louis (Rex Carr, of counsel), for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant appeals a judgment rendered for plaintiff on a jury verdict in the amount of $500,000 for personal injuries received when the plaintiff fell into a burning pile of slack or coal dust.

The site of the occurrence was a tract of 22½ acres which had been devoted to coal mining purposes. Prior to 1947 the property was owned by the Perry Coal Company. That company operated the mine until about 1934 or 1935 when their operation ceased. The mine was thereafter operated by two individuals who served as "trustees" for a short period of time. The plaintiff contends and the defendant denies that the operation by the trustees was at the instance of and for the Perry Coal Company. Following the operation by the trustees the mine was operated by the Coulterville Coal Company. Again, the plaintiff argues and the defendant denies that this operation was at the instance of and for the Perry Coal Company. All mining operations ceased and the mine was closed in 1944 or 1945. About 1946 the top buildings were removed and the tipple burned. The 22½ acre tract was conveyed by quit claim deed by the Perry Coal Company to Ralph Jones, the father of the plaintiff, on April 2, 1947 for a consideration of $400. Subsequent to the sale of the land, by a series of corporate mergers or purchases, the particulars of which are unimportant here, the assets and liabilities of the Perry Coal Company were merged into and assumed by the defendant-appellant, Peabody Coal Company.

As a by-product of the mining operation there was accumulated a pile of slack or coal dust. It was situated approximately 15 feet from the

main mine shaft and its approximate dimensions were 300 feet long, 50 feet wide at one end and 200 feet wide at the other. Plaintiff's father had purchased the abandoned mine property for use as a junkyard and at the time of the occurrence was devoting it to that purpose. On Sept. 11, 1953 the plaintiff, then five years of age, accompanied her father to the mine property where he was to pick up some junk. While her father was working with his load, plaintiff was playing on the slack pile when its surface gave way and she fell feet first into the burning interior of the pile receiving serious and permanent injuries to her feet and legs.

Perspective will be gained by setting forth in sequence the dates of the events embodied in this case. The mine ceased operation by Perry Coal Company in 1934 or 1935; it ceased all operation and was closed in 1944 or 1945. In 1946 the buildings were removed and the tipple burned. The mine property was sold to plaintiff's father in April 1947. Plaintiff was born in March 1948. Plaintiff was injured in the fire in September 1953 when she was five years old. This case was commenced by the filing of a complaint on October 31, 1968. At the time the complaint was filed plaintiff was married and the mother of two children.

On this appeal both parties agree that the liability of defendant turns upon the question of the liability of a vendor for a known undisclosed dangerous condition upon land at the time of its transfer and that the governing rules of law are as stated in Restatement (Second) of Torts § 353. That section provides:

"(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."

This section of the Restatement was invoked in the Illinois case of

*Kordig v. Grovedale Oleander Homes, Inc.,* 18 Ill.App.2d 48, 151 N.E.2d 470, as a correct expression of the applicable law. But the quoted section of the Restatement in fact represents an exception to the general rule of law which is that a vendor of land is not liable for injuries caused to his vendee or others upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time the vendee took possession. See *Kordig v. Grovedale Oleander Homes, Inc.;* Restatement (Second) of Torts § 351; Prosser, Law of Torts, par. 64 (4th ed. 1971).

Plaintiff's complaint alleged negligence by defendant and its predecessors in title, in sum, that

"4. That on the aforesaid date there did exist on said property a large mound of slag and coal dust capable of burning and smoldering deep within it without appearing to do so and which said slag and coal dust was so in fact burning and smoldering on said date and continued to burn and smolder for many years thereafter creating a dangerous and hazardous condition thereby to persons nearby, all of which facts these defendants by and through their agents, predecessors and assignors knew, or in the exercise of reasonable and ordinary care, should have known.

5. That at said time and place these defendants by and through their predecessors, agents, and assignors did negligently and carelessly commit one or more of the following negligent acts:

a. Negligently and carelessly allowed a large burning mound of coal dust and slag to remain on said property when they knew or should have known of the danger to persons in the vicinity of said mound.

b. Negligently and carelessly failed to warn persons of the dangers inherent in the existence of the said burning coal dust and slag mound.

c. Negligently and carelessly failed to remove said slag and coal dust mound and the fire burning therein from the premises prior to its sale to the said Ralph H. Jones.

d. Negligently and carelessly failed to extinguish the fire burning in said slag and coal dust mound prior to the time of the sale of the property to the said Ralph H. Jones.

e. Negligently and carelessly created and allowed to remain in existence a large mound of slag and coal dust with a fire deep within it, hidden to the public at large, and capable of burning for many years thereafter, when these defendants knew or in the exercise of ordinary care should have

known of the hazards and dangers to persons in close proximity thereto by reason of the said fire."

Defendant attacked the sufficiency of plaintiff's complaint to state a cause of action by a pretrial motion to dismiss (which the court denied) and in its post-trial motion (which the court also denied). The matter of the sufficiency of plaintiff's complaint to state a cause is vigorously pursued here by the defendant in both brief and argument.

■■ In considering the sufficiency of plaintiff's complaint we are mindful that section 33(3) of the Civil Practice Act (Ill. Rev. Stat., ch. 110, sec. 33(3)) provides that pleadings shall be liberally construed with a view to doing substantial justice between the parties and section 42(2) of the Civil Practice Act provides that no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet. Furthermore, we are aware that the trend of cases treating with the sufficiency of pleadings is for liberal construction and complaints are upheld when they contain sufficient allegations to inform the defendant of a valid claim under a general class of cases to the end that controversies may be decided on their merits and not because of an adherence to a rigid form of pleading required by a strict interpretation of the Civil Practice Act. (See *Adams v. J. I. Case Co.*, 125 Ill.App. 2d 388, 261 N.E.2d 1; *Fitzgerald v. Van Buskirk*, 96 Ill.App.2d 432, 239 N.E.2d 330.) However, liberal interpretation of the applicable provisions of the Civil Practice Act will not avail to sustain a complaint which wholly fails to state a cause of action. The question of the sufficiency of a complaint to state a cause of action will only be considered on appeal when the complaint wholly fails to state a cause of action and not when the complaint merely states a cause of action imperfectly. *Gustafson v. Consumer Sales Agency, Inc.*, 414 Ill. 235, 110 N.E.2d 865; *Wagner v. Kepler*, 411 Ill. 368, 104 N.E.2d 231; *Psyhogios v. Village of Skokie*, 4 Ill.App.3d 186, 280 N.E.2d 552; *Blum v. City of Chicago*, 126 Ill.App.2d 228, 261 N.E.2d 457.

The critical question becomes, then, do the allegations of plaintiff's complaint sufficiently charge defendant with an actionable breach of the duty owed by defendant to plaintiff as that duty is fixed by law, or, as we may say in this case, as such duty is defined by section 353 of the Restatement set forth above?

Upon an examination of plaintiff's complaint the first impression is that it attempts to state a cause of action in terms of ordinary negligence. This is an immediate shortfall since the liability of a vendor in such cases as this is not derived from negligent conduct. The duty derives

from a condition upon the land, whether natural or artificial, which involves unreasonable risks to persons on the land, known to the vendor, and is predicated upon the existence of other conditions and for the time limitations as described in the Restatement rule. If there is a breach of the legal obligation, liability may attach irrespective of whether the vendor was negligent with regard to the creation of the condition or his conduct with regard to the vendee or others on the land.

■■ Although the complaint is couched in terms of negligence it may nonetheless be found sufficient if the essential elements of the cause of action are present—in such instance we would consider that a cause of action was alleged imperfectly and hold the complaint sufficient. However, we find essential elements lacking. From whatever aspect plaintiff's complaint is examined it is apparent that it fails to allege a cause of action against defendant. Although it does allege the existence of a condition which involves unreasonable risk to persons on the land (the burning pile of slack) it fails to allege, even in substance, that the vendee did not know or have reason to know of the condition or the risk involved, it fails to allege that the vendor knew or had reason to know of the burning pile of slack and realized the risk involved and had reason to believe that the vendee would not discover the condition or realize the risk, and it fails to allege that since the 1947 deed the vendee did not have a reasonable opportunity to discover the burning pile of slack and take precautions and accordingly the liability of defendant for injuries from the burning pile of slack continued. The absence from the complaint of these elements of the defendant's liability leave a proper cause of action unstated; without them the cause of action is incomplete and the liability of the defendant will not attach. See the commentary to section 353 of Restatement (Second) of Torts.

■■ The matter of the sufficiency of plaintiff's complaint when tested against the above rules is not an afterthought upon the part of either defendant or the plaintiff. The record shows that the true basis of liability of the defendant was injected into the case in its early stages and present through persistent argument by both counsel throughout the trial. Although the plaintiff was thus made aware of the deficiencies of the complaint, at no time did she seek to amend to allege a proper cause of action under section 353. We must therefore assume that plaintiff's complaint was not amended because it could not be amended without becoming divergent from the attendant facts.

The knowledge that the slack pile was in fact burning would have to be presumed from the sulfurous odor on the land. Just because the slack pile was burning and there was an odor does not mean that the defendant should have known of the burning. The mine had been

abandoned and the buildings removed more than six years prior to the occurrence and two years prior to the sale. There is no evidence in the record to show that agents of the defendant had any knowledge that the slack pile was burning or had ever smelled the sulfurous odor laying about the land. Plaintiff's father, the vendee, testified that when Mr. O'Brein, defendant's agent, showed him the land they (the father and Mr. O'Brein) never got off the county road and that he smelled the odor before he bought the land but was by himself on the land when he smelled it. Plaintiff's father further testified that the odor could be smelled only around the mine shaft and despite the fact that he used the property as a junkyard for over six years prior to the occurrence he never made any investigation or inquiry to determine the source of the odor. Although he declined any knowledge of the origin of the sulfurous odor he had worked as a coal miner for 12 years and lived in a coal mining community most of his life, and he testified that the sulfurous odor meant to him as a former coal miner that coal was afire.

We conclude that no tort was either alleged or proven and accordingly the judgment of the trial court must be reversed. Reversible error was also committed in the instructions of the law of the case that were given to the jury. Generally, the instructions defined the issues of the case in the same terms of negligence as those in the complaint and the burden of proof instruction was of a similar import. The true basis for liability was nowhere injected into the case by the instructions. All this despite the objections of defendant to the instructions and the assertions of plaintiff's counsel that his instructions did follow the law. However, since we have found that the complaint was fatally deficient there is no need to discuss errors in instructions.

Reversed.

EBERSPACHER, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN dissenting:

In my opinion the majority erroneously conclude that there was no evidentiary basis for the jury to find that the defendant knew or should have known that the interior of the slack pile was burning at the time the plaintiff's father purchased it.

The Restatement (Second) of Torts § 353, comment on subsection (1), states:

"(c) It is not, however, necessary that the vendor have actual knowledge of the condition, or that he be in fact aware that it involves an unreasonable risk of physical harm to persons on the land. It is enough that he has reason to know that the condition

exists and is dangerous, as 'reason to know' is defined in Section 12(1)—that is to say, that he has information from which a person of reasonable intelligence, or his own superior intelligence, would infer that the condition exists, or would govern his conduct on the assumption that it does exist, and would realize that its existence would involve an unreasonable risk of physical harm to persons on the land."

In *Gasteiger v. Gillenwater*, 417 S.W.2d 568, the court said at 571:

"As a general rule, 'a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.' Restatement of Torts, Second, Sec. 352, p. 234; Smith v. Tucker, 151 Tenn. 347, 270 S.W. 66, 41 A.L.R. 830; Belote v. Memphis Development Company, 208 Tenn. 434, 346 S.W.2d 441. But, where the vendor knows of a dangerous condition upon the land and knows or should realize that the vendee has no knowledge of the condition and probably would not discover it or its potentiality for harm, the vendor owes the affirmative duty to disclose the condition and to warn the vendee of its danger, and if he fails to do so, he becomes subject to liability to the vendee and others upon the land with the consent of the vendee for any physical harm caused by the condition after the vendee has taken possession of the land. Belote v. Memphis Development Company, 208 Tenn. 434, 346 S.W.2d 441, citing Section 353 of the Restatement of Torts, Kilmer v. White, 254 N.Y. 64, 171 N.E. 908, 909, 910, and Palmore v. Morris, 182 Pa. 82, 37 A. 995, 999, 61 Am. St. Rep. 693. Cf. Restatement of Torts, Sec. 353, p. 235 where the exception voiced in the Belote case and in the earlier Restatement is broadened so as to impose the duty to disclose a dangerous condition upon those vendors who have 'reason to know of it.'

Knowledge of the existence of the dangerous condition by a vendor will be presumed where the building or dwelling sold was built by the vendors' workmen. Belote v. Memphis Development Company, supra.

In the light of the foregoing authorities and after considering the evidence in the light most favorable to the plaintiff as we are required to do, we are of the opinion that a jury reasonably could find that at the time of sale the defendants had actual knowledge of the dangerous condition created by the 'shoddy' or sub-par construction of the basement stairs; that due to the nature of the

defect, the defendants knew or should have realized that the plaintiffs had no knowledge of the condition and probably would not discover it or its potentiality for harm; that, as a consequence, the defendants were under a duty to disclose the construction defect to the plaintiffs and their failure to do so subjected them to liability for the injuries and damages suffered by the plaintiffs as the result of the collapse of the stairs."

Other courts have expanded the exception stated in section 353 of Restatement. See *Rogers v. Scyphers* 251 So. C. 128, 161 S.E.2d 81; *Fisher v. Simon* 15 Wis. 2d 207, 112 N.W.2d 705; *Schipper v. Levitt & Sons, Inc.*, 44 N.J. 70, 207 A.2d 314.

"An employer is presumed to be familiar with the dangers, latent as well as patent, ordinarily accompanying the business in which he is engaged." (*Baumgartner v. Pennsylvania R.R. Co.*, 292 Pa. 106, 140 A. 622.) "Knowledge of the existence of the dangerous condition by a vendor will be presumed where the building or dwelling sold was built by the vendor's workmen." (*Gasteiger v. Gillenwater, supra.*) "A manufacturer is held to the degree of knowledge and skill of experts." *Moren v. Samuel Langston*, 96 Ill.App.2d 133, 237 N.E.2d 759; *Dunham v. Vaughan & Bushnell Mfg. Co.*, 86 Ill.App.2d 315, 229 N.E.2d 684; Harper & James, *The Law of Torts* 1st ed. (1956) par. 28.14, at 1541.

Since the defendant was in the business of producing coal and it created the slack pile in question which ultimately caused plaintiff's injuries, under the rationale of the foregoing authorities it will be presumed to have such knowledge of matters pertaining to its business as was possessed by those having special acquaintance with that industry. Since the evidence disclosed that slack piles have a propensity to burn under the surface and this fact is known to those in the coal mining business, defendant will be presumed to have such knowledge.

Assuming the facts most favorable to the plaintiff, it appears that the jury was warranted in finding that prior to the date of the purchase, defendant was a coal mine operator, had mined the land on which the accident occurred and had created thereon a slack pile which was in existence at the time of sale. An odor of sulphur lay about the land at the time of the conveyance to plaintiff's father, up until the time the slack pile was bull-dozed into a mine shaft. Slack piles have a propensity to burn under the surface and this fact is known to those experienced in coal mining. On this important point, there are no glaring contradictions in the testimony of witnesses who testified regarding the propensities of coal-mined property to be subject to fires beneath the surface. Not only did the expert witness for plaintiff testify that a mound of coal dust such as was involved here, and which had been created by the

mining operations of the previous owners, could burn undetected for a period of "six, seven, eight years", but also a local coal miner with 35 years of mining experience, a witness for defendant, testified to substantially the same information as plaintiff's expert. Defendant sold the property without giving any warning.

In my opinion, the foregoing is sufficient to establish an evidentiary basis for the jury to find that the fire that caused plaintiff's injuries was in existence at the time of the sale, since the condition was a latent one.

Was there also an evidentiary basis for the jury to find that the plaintiff's father did not know or have reason to know of the condition or risk involved as required by section 353 of the Restatement?

It is the jury's function to weigh contradictory evidence, judge the credibility of witnesses and draw the ultimate conclusion as to the facts. Its conclusion, whether relating to negligence, causation, or any other factual matter, should not be set aside merely because different conclusions could be drawn or judges feel that other results are more reasonable. (*Finley v. New York Central R.R. Co.*, 19 Ill.2d 428, 167 N.E.2d 212.) "The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury." *Devine v. Delano*, 272 Ill. 166.

Verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R. R. Co.*, 37 Ill.2d 494.

Plaintiff's father testified that he did not know that slack would burn beneath the surface; that the sulphur odor was on the surface of the ground for the entire time that he owned it, up until the time that his daughter was injured; that no one warned him of any danger concerning the premises; that he always thought the odor came from the mine shaft. There was also evidence that the mine shaft was incapable of inspection. He also testified that he had worked in a mine for 12 years prior to 1948 when he went into the junk business.

In my opinion, this was a question of fact for the jury to decide. Under the evidence the jury could reasonably have found that plaintiff's father did not know or have reason to know of the condition or risk involved, since the condition was latent rather than open and obvious. On the other hand, it may well have considered all of the evidence, including plaintiff's father's past experience as a miner and decided otherwise. This was a question of fact and not a question of law and I am unable to say that the evidence on this issue when viewed in its aspect most favorable to the plaintiff so overwhelmingly favored the

defendant that no contrary verdict based on that evidence could stand.

Since the majority conclusion concerning plaintiff's complaint is based upon the erroneous premise that plaintiff did not prove a cause of action, I refrain from commenting on that portion of the majority opinion.