(No. 46545.—

# JUDITH SPARLING, Appellant, v. PEABODY COAL COMPANY, Appellee.

*Opinion filed Nov. 27, 1974.—Rehearing denied Jan. 28, 1975.*

Rex Carr, of East St. Louis, and Karns, Starnes, Nester & Stegmeyer, of Belleville, for appellant.

Pope and Driemeyer, of East St. Louis (W. Thomas Coghill, Jr., of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Peabody Coal Company, appealed from the judgment of the circuit court of St. Clair County entered upon a jury verdict in the amount of $500,000 in favor of plaintiff, Judith Sparling, in her action to recover damages for personal injuries suffered when she fell into a fire burning inside a pile of coal dust or slack. The appellate court reversed the judgment (16 Ill. App. 3d 301) and we allowed plaintiff's petition for leave to appeal.

On April 2, 1947, the Perry Coal Company sold a 22½-acre tract of land near Coulterville to Ralph Jones, plaintiff's father, for $400. The land had been used for coal-mining operations from sometime prior to 1918 until 1944 or 1945. In 1946 all of the buildings had been removed. At the time of the sale to Jones the property was not being used, and all that remained from the mining operations were a pond, the main mine shaft, an air shaft and the slack pile involved in this case. The slack pile was described as being approximately 300 feet long, 200 feet wide at one end and about 50 feet wide at the other and varying in height, at various points, from five to six feet. Through several corporate mergers the assets of Perry Coal Company were acquired and its liabilities assumed by defendant.

Plaintiff was born on November 27, 1948, more than a year after her father bought the property. On September 11, 1953, when she was almost five years old, she went with her father in his truck to an area next to the slack pile where he was going to pick up some scrap iron. She took off her shoes, got out of the truck and walked on the slack pile. At a point where the slack pile was approximately five feet high, an area approximately five to six feet in width caved in and she fell into a fire burning at the bottom of the pile. Plaintiff suffered burns which required years of medical treatment and 56 surgical procedures.

In reversing the judgment, the majority of the appellate court correctly concluded (see *Anderson v. Cosmopolitan National Bank,* 54 Ill.2d 504) that the principles applicable to this case are set forth in sections 352 and 353 of the Restatement of the Law of Torts (Second) (hereafter Restatement), which state:

"Sec. 352. Dangerous Conditions Existing at Time Vendor Transfers Possession.

Except as stated in sec. 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

Sec. 353. Undisclosed Dangerous Conditions Known to Vendor.

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused· by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions." (Restatement (Second) of Torts secs. 352, 353 (1965).)

The majority held that plaintiff's complaint, which alleged five acts of negligence (see 16 Ill. App. 3d 301, 304), failed to allege "an actionable breach of the duty owed by defendant to plaintiff ***." (16 Ill. App. 3d 301, 305.) It

pointed out that although the record shows "that the true basis of liability of the defendant was injected into the case in its early stages" (16 Ill. App. 3d 301, 306), making it clear that plaintiff "was thus made aware of the deficiencies of the complaint, at no time did she seek to amend to allege a proper cause of action under section 353" (16 Ill. App. 3d 301, 306). The majority stated further that it "must therefore assume that plaintiff's complaint was not amended because it could not be amended without being divergent from the attendant facts." (16 Ill. App. 3d 301, 306.) It concluded that the evidence did not prove a cause of action under section 353.

Plaintiff contends that the "fair import of her complaint charged negligence and liability under section 353 of the Restatement ***." She argues that "the appellate court's reversal of the judgment *** deprived her of the right to the doctrine of aider by verdict and failed to consider the requirement of Sections 33 and 42 of the Civil Practice Act." She argues further that the complaint alleged, and the evidence proved, that plaintiff's injuries resulted from defendant's negligence, and the fact that under section 353 defendant can be held liable even though its conduct was nonnegligent does not serve to exculpate it from the liability resulting from its negligent conduct.

The case was tried on the theory that defendant had been negligent, *inter alia,* in permitting the slack pile to accumulate, in permitting it to burn, in failing to remove it prior to the sale of the land to Jones and in failing to warn of the dangers inherent in the existence of the burning coal dust. Under the issues instruction given the jury, if the jury found that the alleged dangerous condition existed at the time of the sale of the land, the seller's liability could continue so long as the dangerous condition continued to exist. This is not the law (*Anderson v. Cosmopolitan National Bank,* 54 Ill.2d 504) and the case was tried under

an incorrect theory.

When a case is tried under an incorrect theory of law the appropriate action is to reverse the judgment and remand for a new trial. (*Tankersley v. Peabody Coal Co.,* 31 Ill.2d 496; *Iroquois Furnace Co. v. Wilkin Manufacturing Co.,* 181 Ill. 582.) The appellate court appears to be in agreement that the case was tried under an incorrect theory of law, and the issue which divided the court was whether there was sufficient evidence to prove the essential elements of a cause of action under a correct theory of the case. Where, as here, the appellate court entered, in effect, a judgment notwithstanding the verdict, we will examine the evidence to determine, as a matter of law, if there was evidence which viewed in its aspect most favorable to plaintiff proved the essential elements of the case under the correct theory of law. *Tankersley v. Peabody Coal Co.,* 31 Ill.2d 496; *Zank v. Chicago, Rock Island and Pacific R.R. Co.,* 17 Ill.2d 473.

Prior to examining the evidence, it is necessary to consider one of defendant's contentions concerning the law which governs the case. While defendant, in the main, approves of the rule as stated in section 353 of the Restatement it argues that "A vendor of real estate should not be liable for injuries sustained from a latent condition on real estate after the vendor has parted with title and possession unless the vendor had actual knowledge of the condition at the time of the sale and transfer of possession." It argues further that "a public policy question is presented as to whether actual or constructive knowledge on the part of a vendor of a dangerous condition of real estate is required to impose liability on the vendor after he has parted with title and possession," and that it would be better policy to require actual knowledge before liability attaches.

Section 353 of the Restatement (Second), set forth verbatim earlier in this opinion, states that a seller of land may be subjected to liability by reason of a condition

existing at the time of the sale if:

> "(a) the vendee does not know or *have reason to know* of the condition or the risk involved, and
>
> (b) the vendor knows *or has reason to know of the condition,* and *realizes or should realize* the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk." (Emphasis added.) (Restatement (Second) of Torts sec. 353(1)(a), (1)(b) (1965).)

The italicized words were added in the Restatement (Second) and were not contained in the first Restatement. Subparagraph (c) of the Comment on subsection 1 (Restatement, Second) states:

> "(c) It is not, however, necessary that the vendor have actual knowledge of the condition, or that he be in fact aware that it involves an unreasonable risk of physical harm to persons on the land. It is enough that he has reason to know that the condition exists and is dangerous, as 'reason to know' is defined in section 12(1)—that is to say, that he has information from which a person of reasonable intelligence, or his own superior intelligence, would infer that the condition exists, or would govern his conduct on the assumption that it does exist, and would realize that its existence will involve an unreasonable risk of physical harm to persons on the land." Restatement (Second) of Torts sec. 353(1), Comment (c) at 236 (1965).

We have considered defendant's argument that permitting liability to attach when a seller has only constructive knowledge rather than actual knowledge of a dangerous condition places an unreasonable burden on the seller. We note, however, that under section 353 the concept of constructive knowledge can serve to defeat the buyer's claim as well as impose liability on the seller. There are many situations in which constructive knowledge may serve to impose liability or defeat recovery (see IPI—Civil, secs. 120.03, 120.04, 120.07, 130.01 (2d ed. 1971)) and we are persuaded that the rule as stated in section 353 of the Restatement (Second) correctly states the applicable law. We note parenthetically that although section 358 of

the first Restatement referred only to actual knowledge, section 358 of the Restatement (Second) states that liability may be imposed on a lessor, or the claim of a lessee defeated, by reason of constructive knowledge.

We turn now to the question whether there was evidence which viewed in its aspect most favorable to plaintiff proved the essential elements of her case. An expert witness, called by plaintiff, testified that coal dust or slack may ignite and burn spontaneously, and could burn in a pile, at the bottom of the pile, undetected for a number of years. There was testimony that at the time of the sale to Jones there was a sulfur smell in the area. The expert witness testified that the presence of the sulfur odor indicated that the dust was burning. Plaintiff's father testified that prior to the purchase of the property he had inspected the land with James O'Brien, the former manager of the mine, that while making the inspection he had detected the sulfur odor, which he thought came from the open mine shaft, that he did not know that a slack pile would burn beneath the surface, and that no one warned him of any danger concerning the premises.

Defendant contends that the appellate court correctly held that "There is no evidence in the record to show that agents of the defendant had any knowledge that the slack pile was burning or had ever smelled the sulfurous odor laying about the land." (16 Ill. App. 3d 301, 307.) Plaintiff contends that because Jones, the buyer, when inspecting the premises with O'Brien, could smell the sulfur odor, O'Brien could too, and that defendant, therefore, knew or had reason to know of the condition and realize the risk involved. In a deposition read by defendant, Jones testified that he did not smell the sulfur odor when he was with O'Brien. Defendant argues that "when the testimony of a single witness to prove a given issue is contradictory with no explanation, such testimony is insufficient to prove the issue." The rule in this State and generally is that the contradictory testimony of a

witness does not *per se* destroy the credibility of the witness or the probative value of his testimony, and it remains for the trier of fact to decide when, if at all, he testified truthfully. *Guthrie v. Van Hyfte,* 36 Ill.2d 252, 258, and cases cited therein; 58 Am. Jur. *Witnesses* sec. 863 (1948).

Defendant also argues that there is no evidence that O'Brien was an agent of defendant whose knowledge was that of defendant. We do not agree. The evidence shows that O'Brien was manager of the mine when it was last operated, that Perry Coal Company was at all times the owner of the land and the seller thereof to Jones, and that O'Brien acted as agent for Perry at the time of the sale. The testimony also shows that while the mine was being operated by the "trustees" and later by the Coulterville Coal Company, Perry Coal Company sold the coal produced and that O'Brien received the money for the payroll from Perry Coal Company and acted as paymaster. There was sufficient evidence to support a finding that O'Brien was Perry's agent.

Perry Coal Company, seller of the land, and one of the corporate entities whose assets defendant acquired and whose liabilities it assumed, operated the coal mine for a long period of time and like a manufacturer is held to the degree of knowledge and skill of an expert. In our opinion, the evidence adduced, and the reasonable inferences to be drawn therefrom proved, insofar as what defendant knew or had reason to know, the essential elements of plaintiff's case.

Citing *Anderson v. Cosmopolitan National Bank,* 54 Ill.2d 504, defendant argues that as a matter of law, the possession and occupancy of the property by plaintiff's father for a period of 6½ years was a reasonable time for him to discover and remedy the dangerous condition.

The testimony shows that the fire was not visible, did not emit smoke or steam and, unlike *Anderson,* the dangerous condition here involved was concealed. Plain-

tiff's father and his employee both testified that they noticed a sulfur smell like that produced from a coal furnace. The odor was not present every day, but they smelled it when the wind blew from the mine area toward the area where his junkyard was located. They both thought it came from the open coal-mine shaft next to the slack pile. The father and the employee very seldom went near the mine area. The father was afraid of the open mine shaft and never inspected it to see if it was the source of the sulfur odor. He did not use the land in the vicinity of the slack pile and had no occasion to go near it. He was near the slack pile on the day of the occurrence to salvage some scrap iron which he had seen near the mine shaft. He had instructed his daughter to stay away from the open mine shaft. On this record we hold that it was a question for the jury to decide whether plaintiff's father had a reasonable opportunity to discover the dangerous condition and to take effective precautions against it. We conclude, therefore, that the case should be remanded for a new trial.

We now consider those claims of error which might recur upon retrial. We have examined defendant's contentions concerning allegedly erroneous jury instructions and improper closing argument and are of the opinion that upon trial on a correct theory of law the matters complained of are not likely to recur.

Defendant contends that the circuit court erred in admitting five photographs into evidence and in permitting the jury to take them into the jury room. The first photograph was one taken of plaintiff as a child, prior to her injury, and, although not material to any issue framed by the pleadings, there is no basis on which to hold that its admission was prejudicial. The other photographs showed the condition of plaintiff's feet and legs at the time of trial. Defendant argues that during her testimony plaintiff exhibited to the jury the burns and scars on her legs and body and that the photographs were "merely cumulative."

It argues further that since the photographs portrayed only what the jury had already seen they are "testimonial" in nature and their presence in the jury room conferred an unfair advantage on plaintiff.

There is no contention that the photographs in any manner distorted or exaggerated the appearance of plaintiff's injuries and scars and their admission was a matter for the discretion of the trial court. Section 67(4) of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 67(4)) provides that papers received in evidence other than depositions may be taken to the jury room and no exception is made with respect to photographs. The statutory provision is consistent with the holding of this court in *Chicago and Joliet Electric Ry. Co. v. Spence,* 213 Ill. 220, 224, and the circuit court did not err in permitting the photographs to be taken to the jury room.

Finally, defendant contends that the circuit court erred in excluding from evidence its exhibits 4 through 22. These exhibits are "Coal Reports" prepared by the Department of Mines and Minerals for the years 1931 through 1948, both inclusive. It is defendant's position that these reports were admissible into evidence to show that the mine to which the slack pile was adjacent was not operated by Perry Coal Company after 1931. It argues that these reports are official records of the State of Illinois and admissible in evidence to prove the matters which they purport to record.

An examination of the reports and of the statute pursuant to which they were prepared and submitted (Ill. Rev. Stat. 1969, ch. 127, par. 25) leads us to conclude that the information therein contained was gathered and transmitted to the Governor in order to show the volume of coal mined in each county and in the State, and that they do not demonstrate that the information is sufficiently authentic to be probative of the corporate identity of either the owner or the operator of the mine. The circuit court correctly refused to admit the exhibits into evidence.

For the reasons stated the judgment of the appellate court is reversed and the cause remanded to the circuit court of St. Clair County for a new trial.

*Reversed and remanded.*