NOTICE

Decision filed 11/24/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230503-U

NO. 5-23-0503

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 22-CF-262 |
| | ) | |
| LANCE M. DAVIDSON, | ) | Honorable |
| | ) | Douglas L. Jarman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The evidence was sufficient to support defendant's conviction for domestic battery.

¶ 2    Following a jury trial in Montgomery County, defendant was convicted of domestic battery. The trial court sentenced him to four years and two months in prison with four years of mandatory supervised release. Defendant appeals, arguing that the State failed to present sufficient evidence to prove him guilty beyond a reasonable doubt. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The State charged defendant by two count information. Count One of the information alleged that, on or about July 27, 2022, defendant committed aggravated battery by striking Gary Samela's head with a deadly weapon, a baseball bat. Count Two alleged that defendant committed

1

domestic battery that same day by striking Jessica Holliday, a family or household member, and by pulling her hair.

¶ 5    On November 28, 2022, the matter proceeded to a jury trial. Following jury selection, the State presented Officer Larry Davis from the Litchfield Police Department as its first witness. Officer Davis was on duty on July 27, 2022, and he was dispatched to a residence on East Kirkham Street in Litchfield, Illinois, at approximately 1:30 in the morning. Officer Davis and Officer Reader responded to the scene. Dispatch advised that "a male and female were arguing" and that "a male" was "struck in the head with a bat." Officer Davis first responded to Apartment C and contacted the resident of the apartment, Gary Samela.

¶ 6    Officer Davis then knocked on the door of Apartment D. He knocked "several times" but there was "no answer." Officer Davis could hear "a male and female arguing" but when he knocked, "[t]hey got quiet." Officer Davis went to Apartment A, who originally called 911. He then returned to Apartment D. He knocked again, and no one answered. Officer Davis and Officer Reader called their Sergeant to confirm whether "there was enough exigent circumstances to force entry to make sure the female was okay." Officer Davis knocked again and "announced that we were going to force entry if no one came to the door." Jessica Holliday answered the door. Officer Davis testified that he knew Holliday and defendant from "previous interactions." Holliday advised Officer Davis that defendant was "in the back" of the apartment. Officer Davis handcuffed defendant, read him his *Miranda* rights, and asked defendant "what happened with his neighbor." Officer Davis secured defendant in his squad car.

¶ 7    Officer Davis spoke with Holliday. Officer Davis described Holliday as "super timid, had tears in her eyes." Holliday appeared "very scared" and "didn't want to give much information

2

because she thought she was going to get punished worse for it." Holliday ultimately made a statement to law enforcement.

¶ 8     Jessica Holliday testified. Holliday testified that she lived on East Kirkham Street in Apartment D. Holliday identified defendant as her "boyfriend" of two years. Holliday testified that on July 27, 2022, at 1:30 in the morning, law enforcement arrived at the apartment in response to an argument between Holliday and defendant. Holliday testified that defendant "had gotten hit in the face earlier in the day" and "he got blood" on Holliday's arm. The two were fighting because Holliday "wanted to take a shower, and he wanted to go to bed." The two argued outside of the apartment in the "breezeway." Holliday testified that defendant "pushed me out the door." The State clarified, "Shoved you?" Holliday responded, "Yes." The following exchange occurred:

Q. Okay. At some point was Lance pulling on your hair?

A. To the—when he pushed me out the door, yeah, to keep me out the door. Yeah.

Q. Did he strike you at all?

A. A little bit.

Q. What do you mean by a little bit?

A. It wasn't a full on hit.

Q. Okay. Well, just tell me what happened.

A. The door got slammed on my arm.

Q. Okay.

A. Like that was basically the hit.

Q. Okay. So in shoving you outside, the door got slammed and that hit your arm?

A. Yeah.

3

¶ 9       The neighbor, Gary Samela, came outside and asked defendant to stop. Holliday went back inside the apartment. On cross-examination, Holliday clarified that: "[w]e had gotten into the argument. He had pushed me out the door. The neighbor came out, tried to stop him. He said mind his own business. I went inside. That's when [defendant] came back inside, and that's when we heard the pounding at the door." Holliday testified that she "had just gotten pushed out the door." The door struck Holliday, and she attempted to re-enter the apartment. She testified "That's when my hair was pulled." Defense counsel asked:

Q. So your testimony now is, is that when you tried to get back in the apartment your hair was pulled?

A. It was then in that same…

Q. So was your hair pulled when you were being pushed out of the apartment or was your hair being pulled when you were trying to get back into the apartment?

A. When I was trying to get back in the apartment, he had grabbed me by the hair.

Q. Okay. And did you—were you able to gain access back into the apartment?

A. After the neighbor came out.

¶ 10      On cross-examination, defense counsel adduced that Holliday wrote an email to the State's Attorney's Office on July 28, 2022, after the incident. In the e-mail, Holliday indicated that there was no physical altercation, and the fight was merely verbal. On redirect, Holliday testified that she wrote the e-mail to "help" defendant, because she "loved him." The State asked:

Q. And why did you want to help Lance?

A. Because I loved him.

Q. Okay. So when then are you telling us—obviously telling us that he struck you and pulled your hair and shoved you out the door if that doesn't help him currently, is that fair?

A. I really don't like to lie.

Q. Okay. So I guess I have to ask you which one is the truth, the e-mail or what you told us today?

A. In fairness, I feel that it's all relatively true.

Q. How so?

A. I didn't see what happened with the neighbor.

Q. Okay. What about the part about the altercation being only verbal?

A. It's easier to write it than it is to speak it.

¶ 11   The State next called Gary Samela. On July 27, 2022, Samela resided at East Kirkham in Litchfield, Illinois, in Apartment C. At the time of trial, Samela was in the Montgomery County Jail. Samela testified that he was charged with one count of child pornography and two counts of failure to register as a sex offender charges. Samela was a registered sex offender.

¶ 12   On the date of the incident, Samela heard "a woman's voice screaming." The screaming woke Samela from sleep, and he went to the front door of his apartment. Upon opening the door, Samela observed "Jessica Holliday sitting out in the door stoop, and [defendant] pulling her hair, and Jessica was screaming." Samela yelled at defendant. Defendant yelled back at Samela, and defendant brought "out an aluminum bat" and started "swinging." Defendant hit Samela in the head with the baseball bat.

¶ 13   The State rested. Defendant recalled Officer Davis, who testified that Samela advised Officer Davis that he was struck in the back of the head with a baseball bat. Defendant rested.

5

Following closing arguments and jury instructions, the jury found defendant not guilty of aggravated battery, or the lesser included battery, against Samela. The jury found defendant guilty of domestic battery against Holliday.

¶ 14    On June 2, 2023, the trial court sentenced defendant to four years and two months in prison with four years of mandatory supervised release. Defendant filed a timely notice of appeal on June 7, 2023.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, defendant argues that the State failed to prove him guilty beyond a reasonable doubt. Specifically, defendant contends that Holliday's testimony was inconsistent. In response, the State argues that the evidence was sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt. For the reasons that follow, we agree with the State and affirm.

¶ 17    The State has the burden of proving beyond a reasonable doubt each element of an offense. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). When a defendant challenges the sufficiency of the evidence, a court of review must determine "whether, [after] viewing the evidence in the light most favorable to the State, ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis omitted.) *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson*, 443 U.S. at 319)). It is not the role of the reviewing court to retry the defendant. *In re Q.P.*, 2015 IL 118569, ¶ 24. Rather, it is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *People v. Bradford*, 2016 IL 118674, ¶ 12. Therefore, a court of review will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *Id.*

6

¶ 18    A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Belknap*, 2014 IL 117094, ¶ 67. Although a fact-finder's determination of witness credibility is entitled to great deference, it is not conclusive and does not bind the reviewing court. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

¶ 19    The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant. *Siguenza-Brito*, 235 Ill. 2d at 228. Where the finding of the defendant's guilt depends on eyewitness testimony, a reviewing court must decide whether a fact-finder could reasonably accept the testimony as true beyond a reasonable doubt. *Cunningham*, 212 Ill. 2d at 279. Under this standard, the eyewitness testimony may be found insufficient "only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Id.* at 280. A conviction will not be reversed simply because the evidence is contradictory or because the defendant claims that a witness was not credible. *Siguenza-Brito*, 235 Ill. 2d at 228.

¶ 20    The jury was instructed that: "A person commits the offense of domestic battery when he knowingly and by any means makes physical contact of an insulting or provoking nature with any family or household member." Moreover, to "sustain the charge of domestic battery, the State must prove the following propositions: First, that the defendant knowingly made physical contact of an insulting or provoking nature with Jessica Holliday; and [s]econd, that Jessica Holliday was then a family or household member to the defendant." Holliday testified that the two were in a dating relationship. Thus, defendant concedes that the State proved that Holliday was a family or household member. Defendant disputes, however, that defendant knowingly struck Holliday.

7

Specifically, defendant argues that the State failed to prove that defendant knowingly made physical contact of an insulting or provoking nature. We disagree.

¶ 21    First, the State presented evidence that defendant struck Holliday. Holliday testified: "We had gotten into the argument. He had pushed me out the door." Holliday testified that she "had just gotten pushed out the door." The door struck Holliday, and she attempted to re-enter the apartment. She testified "That's when my hair was pulled." Holliday also testified that the defendant "pushed me out the door." The State clarified, "Shoved you?" Holliday responded, "Yes."

¶ 22    Second, the State presented evidence that defendant pulled Holliday's hair. Holliday testified that defendant pulled her hair to "keep [her] out the door." Holliday testified that she "had just gotten pushed out the door." The door struck Holliday, and she attempted to re-enter the apartment. She testified "That's when my hair was pulled." Samela corroborated Holliday's testimony. Samela testified that he observed "Jessica Holliday sitting out in the door stoop, and [defendant] pulling her hair, and Jessica was screaming." Accordingly, this evidence was sufficient to prove defendant guilty of domestic battery beyond a reasonable doubt.

¶ 23    Defendant asserts that Holliday was inconsistent during her trial testimony regarding when the contact occurred. Specifically, defendant contends that Holliday testified that defendant pulled her hair when pushing her out of the apartment but later stated that he pulled her hair when entering the apartment. Defendant also argues that Holliday gave inconsistent statements, wherein she told the State before trial that she and defendant "only argued and that no physical altercation occurred at all[.]" Defendant argues that Holliday indicated that the encounter was merely verbal. Finally, defendant argues that Holliday's testimony "suggested that any physical contact was unintentional and accidental" as a result of defendant shutting the apartment door. For these reasons, defendant

8

contends that no rational fact-finder could have found defendant guilty beyond a reasonable doubt. We disagree.

¶ 24　Even contradictory testimony does not necessarily destroy the credibility of a witness, and it is the task of the trier of fact to determine when, if at all, she testified truthfully. *Cunningham*, 212 Ill. 2d at 283 (citing *Sparling v. Peabody Coal Co.*, 59 Ill. 2d 491, 498-99 (1974)). Thus, the fact-finder is charged with deciding "how flaws in part of the testimony affect the credibility of the whole." *Id.* Minor discrepancies in testimony affect only its weight and will not render it unworthy of belief. *People v. Burgos*, 243 Ill. App. 3d 993, 1001 (1993). Here, there is nothing in the record indicating that the alleged inconsistencies cited by defendant render the whole of the victim's testimony unworthy of belief. See *Cunningham*, 212 Ill. 2d at 284. The record reflects that defense counsel strenuously cross examined Holliday about the same inconsistencies defendant now raises on appeal, and nonetheless, the jury convicted defendant of domestic battery. The arguments that defendant makes before this court "were also made to the jury below and we, therefore, will not usurp its role in determining whether they raised a reasonable doubt." *People v. Rojas*, 359 Ill. App. 3d 392, 398 (2005).

¶ 25　Viewing all of the evidence in the light most favorable to the prosecution, coupled with the reasonable inferences that may be drawn therefrom, we conclude that a rational trier of fact could have found defendant's guilt beyond a reasonable doubt. For the foregoing reasons, we hold that the State presented sufficient evidence to prove defendant guilty of domestic battery beyond a reasonable doubt.

¶ 26　　　　　　　　　　　　III. CONCLUSION

¶ 27　For the foregoing reasons, defendant's Montgomery County conviction for domestic battery is affirmed.

¶ 28    Affirmed.