KEITH CHAPMAN *et al.*, Plaintiffs-Appellants, *v.* LILY CACHE BUILDERS, INC., Defendant-Appellee.

Third District   No. 76-277

Opinion filed May 3, 1977.—Rehearing denied May 16, 1977.

John E. Peterson, of Saxon, Niznik & Peterson, of Plainfield, for appellants.

Robert L. Speers, of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiffs Keith Chapman and Thelma Chapman, as father and mother and next friends of Rita Chapman, a minor, and individually, appeal from an order of the Circuit Court of Will County dismissing the complaint filed by plaintiffs, on motion of defendant Lily Cache Builders, Inc. The action was instituted to recover damages for personal injuries sustained by the minor daughter of Keith and Thelma Chapman, when she fell on an improperly constructed stairway in the home owned by the Chapmans. The stair was built and sold to them by defendant Lily Cache Builders, Inc., a home-building general contractor.

On appeal in this court, plaintiffs acknowledge that their theories of recovery as advanced in the trial court have not heretofore been recognized by Illinois courts, but argue and contend that we should impose liability upon the manufacturer-builder-contractor-vendor of the home on theories of negligence and of strict liability in tort.

Keith and Thelma Chapman contracted with defendant Lily Cache Builders, Inc. (hereinafter called "Lily"), which was a real estate development company and home building contractor. They purchased a lot from defendant in Plainfield, Illinois, upon which defendant constructed a house for them pursuant to contract. The home was occupied by plaintiffs in September 1973. On January 24, 1974, plaintiff Rita Chapman, the minor daughter of Keith and Thelma Chapman, slipped and fell while descending a flight of stairs, which caused her personal injuries. In the complaint it was alleged that (1) the width of the stair treads was shorter than required by law, (2) the stairs did not have a surface designed to limit the possibility of slipping, and (3) the stairs did not have handrails, all in violation of the Will County Building Code.

In counts I and III, plaintiffs, as parents and guardians of Rita, sought recovery for the personal injuries sustained by the minor. In counts II and

IV, plaintiffs individually sought recovery for medical expenses incurred by them by reason of Rita's injuries. Counts I and II attempted to state causes of action based on strict liability in tort and counts III and IV sought to state causes of action based upon negligence. Defendant Lily moved to dismiss the complaint, and, as we have noted, the complaint was dismissed.

Plaintiffs first argue that the builder-vendor of the house should be strictly liable in tort to an occupant of that house who is injured after the vendee has taken possession of the house, where a dangerous condition which was created by the builder-vendor existed at the time the vendee took possession and was the cause of such injury. Plaintiffs acknowledge that Illinois law has not heretofore recognized such a right of recovery in the vendee of real estate, but argues that in light of the growing trend in other jurisdictions, the courts of this State should impose strict liability in tort upon builders-vendors of new residences. The Illinois Supreme Court considered, in *Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491, 322 N.E.2d 5, the issue of liability of a defendant-vendor of real estate (which had previously been used for coal mining operations) where personal injuries were sustained by the daughter of defendant's vendee, when, six years after the sale of the property, the daughter fell through a slack pile previously used by defendant-vendor, and into a fire burning at the bottom of the slack pile. In *Sparling,* the supreme court concluded that the liability of a vendor for physical injuries occurring after the vendor's transfer of possession is controlled by sections 352 and 353 of the Restatement (Second) of the Law of Torts (1965) (hereinafter referred to as Restatement), which states:

" §352. Dangerous Conditions Existing at time Vendor Transfers Possession.

Except as stated in §353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial which existed at the time that the vendee took possession."

" §353. Undisclosed Dangerous Conditions Known to Vendor.

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the

condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions." (Restatement (Second) of Torts §§352, 353 (1965).

■■ In *Kordig v. Grovedale Oleander Homes, Inc.* (1st Dist. 1958), 18 Ill. App. 2d 48, 151 N.E.2d 470, the appellate court considered a cause factually similar to the instant case, where the plaintiff, a minor son of the vendees, suffered injuries in a fall on a stairway in a home constructed by defendant builder-vendor, where the house lacked a handrail on a portion of the stairway. In the *Kordig* case, the court concluded that the defendant's liability was controlled by similar sections of the Restatement of Torts, and stated, at 18 Ill. App. 2d 48, 55:

"In the case at bar the plaintiff failed to establish that there was a defective condition. We hold that the absence of an extra rail was not a latent or concealed defect."

It appears, therefore, that the Illinois rule is not to allow recovery in strict liability in tort for injuries sustained by the minor child such as appeared in the instant case. Although the Illinois Supreme Court in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, adopted strict liability in tort as a means of recovery against a manufacturer of a product other than food, strict liability in tort has not been imposed in this state upon a vendor of real estate for personal injuries occurring subsequent to the transfer of possession. Historical and practical differences between the manufacturer of personal property and the builder-vendor of a residence are apparent. As the Illinois Supreme Court stated in *Mercer v. Meinel* (1919), 290 Ill. 395, 400, 125 N.E. 288:

"There is a material difference between the relation between a manufacturer or vendor of a machine or article purchased for a specific use and one using the machine or article for the contemplated purpose, or between a landlord occupying a contractual relation with his tenant and the tenant, and the situation of one who has ceased to have any connection whatever with the property which he has conveyed or his grantee. Whether or not there is a liability in case of an existing dangerous condition, it cannot be true that the grantor assumes a duty to see that the premises remain in a safe condition."

■■ Professor Harry D. Krause, in an article entitled *Products Liability and the Independent Contractor,* 1964 U.Ill.L.F. 748, in considering the

proliferation of strict liability, suggests that (at 1964 U.Ill.L.F. 748, 767):

"A dividing line * * * takes on some definition if a mass-produced manufactured thing is compared with a custom-built, handmade one. Since the instrumentality produced by an independent contractor working on real estate more often than not will fall into the latter category, there is in such cases a basis for distinguishing between him and the manufacturer of an industrial product."

Professor Krause suggests, additionally, that an independent contractor is less able than a manufacturer of mass-produced goods to act as an insurer of his own conduct, and for that reason independent contractors should not be subjected to strict liability. We conclude, that on the precedents in this State, the provisions of sections 352 and 353 of Restatement control liability of a builder-vendor of a residence, and that the trial court properly dismissed counts I and II of the complaint which are predicated on strict liability in tort.

■■ Plaintiff also argues that a builder-vendor of a residence should be held liable in negligence for dangerous conditions created by the builder-vendor. It is also clear that Illinois law does not impose negligence liability upon the vendor of real estate. As the court stated in *Sparling v. Peabody Coal Co.* (5th Dist. 1973), 16 Ill. App. 3d 301, 305, 306 N.E.2d 79:

"Upon an examination of plaintiff's complaint the first impression is that it attempts to state a cause of action in terms of ordinary negligence. This is an immediate shortfall since the liability of a vendor in such cases as this is not derived from negligent conduct."

While the judgment of the Appellate Court in the *Sparling* case was reversed, the Illinois Supreme Court, on appeal in 59 Ill. 2d 491, 494, stated:

" * * * the majority of the appellate court correctly concluded [Citation.] that the principles applicable to this case are set forth in sections 352 and 353 of the Restatement of the Law of Torts (Second) * * *."

The Illinois Supreme Court also stated in *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 40, 139 N.E.2d 275:

"The general rule is that where an independent contractor is employed to construct or install any given work or instrumentality, and has done the same and it has been accepted by the employer and the contractor discharged, he is no longer liable to third persons for injuries received as the result of defective construction or installation. [Citation.] This rule, however, is subject to certain well recognized exceptions whereby a contractor may be held liable even after acceptance of his work by the contractee (1) where the thing dealt with is imminently dangerous in kind, such as

explosives, poisonous drugs, and the like, (2) where the subject matter of the contract is to be used for a particular purpose, requiring security for the protection of life, such as a scaffold, and (3) where the thing is rendered dangerous by a defect of which the constructor knows but deceitfully conceals, and which causes an accident when the thing is used for the particular purpose for which it was constructed."

Plaintiffs suggest that we apply the rule of liability under the precedent of *MacPherson v. Buick Motor Co.* (1916), 217 N.Y. 382, 111 N.E. 1050. The *MacPherson* rule is stated in section 395 of the Restatement (Second) of the Law of Torts (1965):

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied."

It is noted that this rule, as stated in the Restatement, is limited to the manufacturer of a chattel, and *MacPherson* itself established the rule with respect to a manufacturer of a chattel.

Plaintiffs also cite the case of *Schipper v. Levitt & Sons* (1965), 44 N.J. 70, 207 A.2d 374, where the New Jersey court applied the doctrine of strict liability in tort to the builder-vendor situation such as we have in the instant case. In that case the New Jersey Supreme Court held that the evidence was sufficient to take to the jury the question as to whether defendant had been negligent in installing a hot water system without a mixing valve, and that defendant could be held liable on the theory of warranty or strict liability in tort upon proof that the design was unreasonably dangerous and proximately caused the injury. While this case contains persuasive arguments for extension of the doctrine of strict liability in tort or recovery for negligence under cases such as we have before us, we believe that we are required by the recent Illinois Supreme Court decision to adhere to the Illinois rule expressed there, that recovery on the complaint as framed in the instant case could not be sanctioned.

■■ We agree with plaintiffs that we have applied the doctrine of an implied warranty of habitability in cases involving property damage (*Weck v. A:M Sunrise Construction Co.* (1962), 36 Ill. App. 2d 383, 184 N.E.2d 728; *Hanavan v. Dye* (1972), 4 Ill. App. 3d 576, 281 N.E.2d 398; and *Garcia v. Hynes & Howes Real Estate, Inc.* (1975), 29 Ill. App. 3d 479, 331 N.E.2d 634). We do not believe that we are authorized to extend this doctrine so as to permit recovery by a third party for contended negligent

construction which causes injury to such third party under either the doctrine of strict liability in tort, or on the negligence theory. If this rule is to be expanded and changed, in view of the relatively recent expression on this subject in the Illinois Supreme Court, we do not believe that we would be justified in initiating such change, but that the change or modification, if any is to be made, should be made by the Illinois Supreme Court.

In view of the precedents, therefore, we affirm the judgment of the Circuit Court of Will County.

Affirmed.

STENGEL, P. J., and SCOTT, J., concur.