(No. 49469.-

CENTURY DISPLAY MANUFACTURING CORP. *et al.,* Appellants and Cross-Appellees, v. D. R. WAGER CONSTRUCTION CO., INC., *et al.*—(United States Steel Corporation, Appellee and Cross-Appellant.)

*Opinion filed May 16, 1978.*

GOLDENHERSH AND KLUCZYNSKI, JJ., took no part.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini and Thomas H. Ryerson, of counsel), for appellants.

Jerome N. Groark, James G. McConnell, Weston W. Marsh, and Christine M. Wheelock, of Chicago (Rooks, Pitts, Fullagar & Poust, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This action was filed in the circuit court of Cook County by plaintiffs, Century Display Manufacturing Corporation (Century), and Hartford Fire Insurance Company and Reliance Insurance Company, subrogees of Drovers National Bank of Chicago, trustee, against United States Steel Corporation (U.S. Steel), and two other defendants not involved in this appeal, to recover damages for fire loss to Century's property. Plaintiffs' complaint alleged both negligence (count II) and willful and wanton conduct (count III) by U.S. Steel. The court allowed U.S. Steel's motion for summary judgment and plaintiffs appealed. The appellate court affirmed the circuit court

with respect to count II, but reversed and remanded as to count III. (46 Ill. App. 3d 643.) We granted plaintiffs' petition for leave to appeal from that portion of the appellate court's order affirming summary judgment for U.S. Steel with respect to count II, and pursuant to our Rule 318 (58 Ill. 2d R. 318) we have granted U.S. Steel's request to review the appellate court's order reversing summary judgment as to count III.

On April 28, 1970, U.S. Steel entered into a contract to sell to Century premises formerly known as U.S. Steel Chemical Division, which had been used for the manufacture of various organic coating products until 1967, when production at the plant ceased. Included in the sale of the building were various fixtures, including pipes and tanks which had been used for the transmission and storage of the materials and chemicals used in the manufacture of the coating products. Among the materials that had been contained in the tanks and pipes were asphalt solvents, kerosene, and several other flammable products.

Century went into possession of the premises on May 14, 1970. Soon thereafter, Century retained D. R. Wager Construction Company, Inc., to remodel portions of the building. On August 5, 1970, a fire broke out at the site where Wager was working on the premises. While the exact cause of the fire is undetermined, allegedly the flammable liquid still in the tanks and pipes was ignited in the course of Wager's work. The ensuing blaze ultimately destroyed the building and other property which Century had stored on the premises.

The plaintiffs sought recovery for damages to the property from Wager and its alleged agent, as well as from U.S. Steel. Count I of the complaint was directed against Wager and the alleged agent, who are not parties to the present appeal.

Counts II and III against U.S. Steel are premised upon

sections 352 and 353 of the Restatement (Second) of Torts, both of which have been acknowledged by this court as stating the law in Illinois. (See *Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491.) Section 352 sets forth the general proposition that a vendor of land is not liable for physical harm to a vendee or to others after the vendee has taken possession caused by a dangerous condition, which condition existed at the time the vendee took possession. (Restatement (Second) of Torts sec. 352 (1965); *Anderson v. Cosmopolitan National Bank* (1973), 54 Ill. 2d 504.) Section 353 of the Restatement carves out an exception to the general rule of nonliability, applicable when the vendor conceals or fails to disclose to his vendee a condition which poses an unreasonable risk to persons on the land. Section 353 provides:

> "(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if
>
> (a) the vendee does not know or have reason to know of the condition or the risk involved, and
>
> (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.
>
> (2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."

The appellate court held, and U.S. Steel urges in this court, that recovery for damage to property is not authorized under the law as stated in section 353 except in cases where a contractor-builder sells newly constructed

residential property to a layman. It is defendant's contention that the term "physical harm," as contained in section 353, does not include damages to property but refers solely to recovery for personal injuries. However, section 7(3) of the Restatement (Second) of Torts (1965) states:

> "The words 'physical harm' are used throughout the Restatement of this Subject to denote the physical impairment of the human body, or of land or chattels."

Again, in comment *e* to section 7 it is stated:

> "*Physical harm.* The words 'physical harm' are used to denote physical impairment of the human body, or of tangible property, which is to say land or chattels. Where the harm is impairment of the body, it is called 'bodily harm,' as to which see section 15."

Although the overwhelming majority of cases in this area of tort liability concern themselves with recovery for damages incurred as a result of bodily injury (see Annot., 8 A.L.R.2d 218 (1949); Annot., 48 A.L.R.3d 1027 (1973); 65 C.J.S. *Negligence* sec. 93 (1966)), it is clear that the term "physical harm," as used in section 353, encompasses damages to tangible property as well as injuries to the person. Because of the disposition we make of this case we need not decide another of defendant's contentions, that is, whether recovery under section 353 is permissible for damages to the property which is the subject of the transfer from the vendor to the vendee, or whether such recovery is limited to damages to other property of the vendee which is located on the conveyed premises.

Although we have held that the appellate court erred in failing to apply section 353 of the Restatement to cases involving property damage, we nonetheless conclude that the appellate court properly affirmed the order of the trial court granting summary judgment for U.S. Steel on count II. Summary judgment is proper when the pleadings, together with depositions, the affidavits and other materials filed in support of and in opposition to the motion,

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390; *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580.) Voluminous materials, consisting of affidavits, answers to detailed interrogatories, and depositions, were filed by both parties. After considering all of these we conclude that there was no triable issue of material fact and that the defendant was entitled to judgment as a matter of law.

The appellate court's opinion correctly points out that this was an arm's length transaction between corporations, whose officers were represented by attorneys and were knowledgeable in the many ramifications of real estate transfers. In fact, one of the corporations, of which the president of Century was also an officer, was engaged in the business of purchasing and liquidating commercial plants. After extensive negotiations it was at plaintiff Century's suggestion that, for a reduced price, the sale of the plant be consummated on an "as is" basis. Joseph T. Weiss, the president of Century, stated that the term "as is" means that the vendee takes the premises, including all the equipment and material thereon, as they existed, that is, everything in its then condition. Hugh W. Best, an officer of an affiliated company, and Weiss had inspected the property for Century on several occasions before the sale and, as will be noted later on, after the sale. Best and Weiss were aware of the existence of the pipes and tanks in the plant. They also knew of the general nature of the manufacturing process that had been carried on by U.S. Steel in the plant, and they were informed during inspection that the tanks were used for the transfer, storage and mixture of materials in the manufacturing process. They did not inquire, nor were they informed by U.S. Steel, of the nature of the materials that had been in the pipes and tanks. The record also establishes that some

time after the production in the plant had ceased early in 1967, U.S. Steel had had the liquid material removed from the pipes and tanks.

Admittedly, there may have been some potential harm from the residue of liquids in the pipes and tanks when they were ignited by some outside or independent agency. In this case, the material was apparently ignited by an employee of Wager, the contractor who had been employed to remove the equipment. Nothing in the record, however, indicates that there was any explosion. Best stated in his deposition that he did not know what caused the fire and he was not sure how it started. He had talked to an adjuster, the fire chief, and Wager about the fire. He was asked on his deposition:

> "Do you know whether any determination has ever been made in any manner by anyone as to whether or not flammable liquids were involved in the cause of this fire?"

Best replied:

> "Not to my knowledge. I don't recall anything like that."

We do not accept U.S. Steel's argument that the conveyance of the property "as is" is sufficient to exculpate the vendor and to justify the entry of the summary judgment order for U.S. Steel. We do find, however, that the conveyance "as is" is an important factor under the facts in this case in determining whether or not the exception created by section 353 to the general rule of nonliability of the vendor is applicable.

Recovery under section 353 of the Restatement (Second) is authorized only in situations where the vendor fails to disclose a condition which involves an *unreasonable risk*. The mere presence of a residue of combustible liquids or material sealed in pipes or tanks, which only became ignited through the intervention of some outside agency, did not constitute an *unreasonable risk* which would permit the vendee to recover under section 353, where the knowledgeable vendee, after several inspections of the

property, agreed, for a reduced price, to take the property "as is."

The complaint does not charge that U.S. Steel concealed the condition that the plaintiffs allege existed on the premises, but only that U.S. Steel "[f]ailed to advise" Century of the presence of flammable liquids. Section 353 of the Restatement (Second) covers two different kinds of conduct of the vendor. If the vendor "actively conceals the condition" then the liability stated in subsection 1 of section 353 continues until the vendee has discovered the condition and has a reasonable opportunity to take effective precautions against it. As noted, the allegations of the complaint do not charge that the defendant concealed the condition, and the affidavits, interrogatories and depositions do not establish any concealment. The second situation covered by section 353 involves cases where the vendor "fails to disclose" a condition which involves an unreasonable risk. In such a case it is provided that the liability of the vendor "continues only until the vendee has had a reasonable opportunity to discover the condition and to take such precautions" as are necessary.

In *Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491, this court held *that on the record of that case* it was a question of fact for the jury to decide whether the vendee had a reasonable opportunity to discover the dangerous condition and to take effective precautions against it. In *Sparling* the vendee had purchased a 22½-acre tract of land from a coal company. The land had been used for coal-mining operations. The vendee had inspected the property before he bought it, but he thought that the smell of sulfur came from an open mine shaft. He stated that he did not know that it came from a burning slack pile and that he did not know that a slack pile would burn beneath the surface. It was this burning slack pile which constituted the dangerous condition into which his

daughter fell. After the purchase of the land, the vendee used the property for a junkyard and did not use that area in the vicinity of the mine and the slack pile and had no occasion to go near it. He was afraid of the open mine shaft and never inspected to see if it was the source of the sulfur odor which he occasionally smelled when the wind blew from the direction of the shaft.

The facts in our case are far different. As indicated above, the vendee here, and its officers, attorneys, and employees, were experienced and knowledgeable in the buying, selling, and dismantling of commercial plants. Both Weiss and Best had inspected the plant about four times prior to its purchase. They were informed of the use that had been made of the pipes and tanks located on the premises. Weiss stated that he had also inspected the plant about six times between the time of its purchase and the time of the fire some 2½ months later. Best stated that he was in the plant two or three times each week during that interval. Best went over the premises with Wager several times and arranged for the demolition and remodeling of the premises. Mr. Manning, an employee of another affiliated company, inspected the equipment to determine what equipment could be sold. In fact, some of the equipment was dismantled and sold prior to the fire. Also, Wager employees had been working on the demolition and remodeling project for a week before the fire. Under these facts, as contrasted with the record in *Sparling*, we must conclude as a matter of law that the vendee had a reasonable opportunity to discover the dangerous condition complained of and to take the necessary precautionary measures to protect against it.

In our opinion the appellate court improperly reversed summary judgment for U.S. Steel with respect to count III (charging willful and wanton conduct by U.S. Steel). The appellate court apparently concluded that U.S. Steel's motion for summary judgment was directed only to the

negligence count, count II. We do not agree. Plaintiffs framed both counts on the basis of identical facts, merely substituting "willful and wanton" in count III where the word "negligence" appeared in count II. It is too narrow an interpretation of U.S. Steel's motion to conclude that it was directed only to one count; the motion satisfactorily dealt with both the factual underpinnings of count II and count III.

The motion was not directed solely to count II but asked for judgment in U.S. Steel's favor and against the plaintiffs, "dismissing the complaint with prejudice and with costs." This clearly indicates that not only was U.S. Steel asking for summary judgment as to count II but that plaintiffs' entire case against U.S. Steel be disposed of and that costs be assessed against them. The order granting the motion for summary judgment ordered "that the plaintiffs take nothing by their said suit, and that defendant United States Steel Corporation go hence without day." Thus, the order granted U.S. Steel's prayer to dispose of the entire case and nothing was left pending of either count II or count III. Consequently, the order of the appellate court reversing summary judgment for U.S. Steel as to count III is reversed.

In summary, that portion of the judgment of the appellate court affirming summary judgment as to count II is affirmed, and that portion of the judgment of the appellate court reversing summary judgment as to count III is reversed. The judgment of the circuit court is affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*

GOLDENHERSH and KLUCZYNSKI, JJ., took no part in the consideration or decision of this case.