THOMAS SMITH *et al.*, Plaintiffs-Appellees, v. ELDON ETHELL *et al.*, Defendants-Appellants.

Fourth District   No. 4—85—0662

Opinion filed June 12, 1986.

Jefferson Lewis and Nolan Lipsky, both of Petersburg, for appellants.

Knuppel, Grosboll, Becker & Tice, of Petersburg, for appellees.

JUSTICE WEBBER delivered the opinion of the court:

The plaintiffs entered into a contract with defendants for the purchase of a tavern. Plaintiffs sought to cancel the contract because of the poor condition of the roof. They initiated suit to recover the sum of $5,000 transferred to defendants as a down payment for the purchase of the tavern. After a bench trial the circuit court of Menard County found that defendants Eldon Ethell (Eldon) and E & E Club, Inc. (E&E), had fraudulently misrepresented the condition of the roof. Defendant Aneta Ethell (Aneta) was dismissed at the close of the plaintiffs' evidence on a directed finding. The court entered judgment for plaintiffs and defendants Eldon and E&E appeal.

On June 11, 1984, plaintiffs responded to an advertisement in the newspaper announcing the sale of defendants' tavern. Plaintiffs visited the tavern, spending two to three hours inspecting the building and equipment. Plaintiffs observed that a portion of the ceiling over the bar sagged and was water stained. When plaintiffs inquired about the condition of the roof, Eldon replied that the roof was in "good condition for an old building." Eldon stated the problem was caused by a leak in the air conditioner, which was situated above the water-damaged area. According to plaintiffs, Eldon also told them the roof had never leaked. When plaintiffs further inquired whether they could see the attic, Eldon replied that the attic had no lights. Plaintiffs testified that Eldon had also stated that there was no need to go up to the attic, that there was nothing they could see by going up to the attic. It is undisputed that Eldon did not physically prevent plaintiffs from inspecting the attic, but that Eldon's statements sufficiently discouraged plaintiffs from any further investigation of the attic. After the inspection both parties went to defendants' residence, where contract terms were finalized. Plaintiffs left for a short period of time. During this period they visited with an attorney. Plaintiffs stated that they did not take the contract with them. At their attorney's office they discussed possible business structures. After obtaining a check for $5,000 as a down payment, they returned to defendants' residence and signed the contract to purchase. Aneta was a real estate agent and filled in the purchase contract, of which she had forms at home. Plaintiffs then returned to their attorney's office with the agreement. Plaintiffs both work as laborers in the construction in-

dustry and have never been involved in a real estate transaction, commercial or residential, prior to contracting to purchase the tavern.

Between June 11, 1984, and June 25, 1984, plaintiffs visited the tavern several times together and individually to get acquainted with the business. They made arrangements with the beer distributor and the linen company to continue servicing the tavern. Each time they visited they would inquire about the ceiling problem and the condition of the roof. Each time they inquired they generally received the same reply: there were no lights, that the problem was the air conditioner, and there was no reason to inspect the attic. On June 23, 1984, plaintiff Thomas Smith (Smith) and Jim Miller, a friend who is a plumber, visited the tavern to see about hooking up a water softener. Miller testified that he noticed the plasterboard hanging down in the area of water damage and asked Eldon if the roof leaked. When Eldon replied that the problem was with the air conditioner, Miller asked to look at it. According to Miller, Eldon replied that he would prefer Miller not go up to the attic as there were no lights up there and there were customers in the tavern. Miller offered to get a flashlight out of his truck, but Eldon stated that he preferred Miller refrain from doing so. Two days later, on June 25, plaintiffs appeared at the tavern with a flashlight and stated to Eldon that they were going to inspect the attic. Plaintiffs testified that upon inspection of the attic they discovered holes in the roof, water-soaked beams, and that part of the seal of the roof had pulled away. Based on the condition of the roof, plaintiffs notified defendants of their decision to cancel the contract and demanded the return of their $5,000. Defendants refused claiming plaintiffs had breached the contract and defendants were entitled to keep the money. Plaintiffs sued for the return of the money alleging several theories, including fraud. The circuit court ordered a directed verdict for Aneta. The court found that Eldon and E&E had fraudulently misrepresented the condition of the roof to plaintiffs. Defendants filed a timely appeal.

■ It has long been held that a contract may be set aside because of a fraudulent misrepresentation. (*Abbott v. Loving* (1922), 303 Ill. 154, 135 N.E. 442.) The elements of a fraudulent misrepresentation are: (1) false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599.) Reliance on the part of the defrauded party must be justified.

79 Ill. 2d 282, 402 N.E.2d 599.

■ On appeal defendants argue plaintiffs did not justifiably rely on Eldon's statements. Defendants assert that plaintiffs were on notice of the condition of the ceiling above the bar prior to signing the contract. They were not prevented from inspecting the attic; they were free at any time to obtain a flashlight and investigate the cause of the water damage. Eventually plaintiffs did investigate and, as a result of their investigation, they cancelled the contract.

We agree that plaintiffs were on notice of a possible problem in the ceiling area above the bar and that ordinary prudence would have required them to investigate. In *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 169 N.E.2d 229, our supreme court reiterated the rule that "a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts." (20 Ill. 2d 89, 94, 169 N.E.2d 229, 232.) In the present case plaintiffs observed water damage to the area above the bar during their inspection of the premises on June 11, 1984. They spent two to three hours examining the building on that day. Their tour included the basement as well as the main level. After discovering a potential problem with the ceiling, plaintiffs inquired about the roof and about inspecting the attic. They were told the roof was in good condition but that there were no lights in the attic for them to inspect. Accepting plaintiffs' testimony that Eldon told them there was no need to go up to the attic, the fact remains that plaintiffs were not prohibited from inspecting the attic. A reasonable man would have inspected the cause of the water damage in order to assure himself that the tavern was suitable for purchase. With the state of the roof unresolved, plaintiffs went to defendants' residence where the contract was finalized.

■ Plaintiffs respond by arguing they had a right to rely on defendants' statements. Plaintiffs point to the disparity in knowledge and experience between themselves and defendants as grounds for justifying their reliance upon Eldon's statements. Defendants had owned the tavern for nine years and were well acquainted with the building's structure. Plaintiffs had never been involved in a real estate transaction. Eldon's statements discouraged investigation of the water damaged area and, plaintiffs argue, justified plaintiffs' reliance on Eldon's representation that the roof was in good condition. Plaintiffs look for support to the rule that where a plaintiff's inquiries are inhibited through a defendant's statements which create a false sense of security or block further investigation, the plaintiff's failure to investigate further is not fatal. (*Carter v. Mueller* (1983), 120 Ill. App.

3d 314, 457 N.E.2d 1335.) Alternatively, plaintiffs argue that any negligence on their part in not investigating the damage they saw does not mitigate defendants fraudulent misrepresentation. Plaintiffs cite *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89, for the rule that "a person who is guilty of fraudulent misrepresentation cannot interpose a defense that the person defrauded was negligent in failing to discover the truth." (66 Ill. App. 2d 134, 140-41, 213 N.E.2d 89, 92.) Plaintiffs acknowledge that the rule is qualified in that the defrauded party must first show he had a right to rely on the misrepresentations.

■■ Answering both arguments, we believe that Eldon's state-· ments discouraging plaintiffs from an examination of the attic area were not sufficiently prohibitive to justify plaintiffs' reliance on them and overcome the fact that plaintiffs were on notice of a possible patent defect. In determining whether reliance is reasonable, courts look to all the relevant circumstances surrounding the misrepresentation. (*Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 454 N.E.2d 723.) Dean Prosser comments on when an individual of ordinary prudence is on notice of a possible problem and that further investigation may be required:

> "It is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." (Prosser, Torts sec. 108, at 718 (4th ed. 1971); see *Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 454 N.E.2d 723.)

We believe that plaintiffs were on notice of a potential defect in the roof of the tavern and should have investigated the cause of the water damage. Eldon did not prohibit plaintiffs from searching the attic. Admittedly, Eldon discouraged plaintiffs from any investigation. Plaintiffs, however, were contemplating the purchase of the tavern, an investment of $60,000. The defect was a visible one although the cause of the defect was unclear without further inspection. "A person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another." (*Central States Joint Board v. Continental Assurance Co.* (1983), 117 Ill. App. 3d 600, 606, 453 N.E.2d 932, 936.) In this case plaintiffs noticed a potential problem but were satisfied enough with Eldon's answer to sign a contract to purchase. Their actions were not those of ordinary prudent men and their argument of justifiable reliance must fall.

As we agree with defendants and hold that plaintiffs were not justified in relying on Eldon's statements, we need not consider defendants' other arguments. The order and judgment of the circuit court of Menard County is reversed.

Reversed.

MORTHLAND, J., concurs.

JUSTICE GREEN, dissenting:

I dissent. I do not agree that plaintiffs' reliance on defendants' misrepresentation was unjustified as a matter of law.

In *Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 457 N.E.2d 1335, cited by the majority, evidence showed that a prospective tenant had been dissuaded from checking misrepresentations made on behalf of a landlord as to the condition of an apartment when he was told that a key to the apartment was unavailable. The First District reversed a finding against the prospective tenant (who later became a tenant) on a fraud count and held that the statement that the key was unavailable negated the need for further investigation. The appellate court stated that reliance is justified "where the person making the statement has *inhibited* plaintiff's inquiries by either creating a *false sense of security* or *blocking investigation*." (Emphasis added.) 120 Ill. App. 3d 314, 319, 457 N.E.2d 1335, 1340.

Here, plaintiffs relied upon defendants' misrepresentations only after being told that they could not see anything if they went to the attic and were further assured that nothing was amiss in regard to the roof. Thus, defendants "inhibited [plaintiffs'] inquiry" by both "creating a false sense of security" and also by "blocking investigation." When the foregoing conduct by defendants and the plaintiffs' lack of sophistication in business matters is considered, it is apparent that the evidence supported the court's determination that plaintiffs' reliance on defendants' misrepresentations was justified.

Interestingly, the successor text to that cited by the majority indicates a strong movement away from requiring a showing of any substantial care before a person may rely upon a material representation by a party to a business transaction. The text notes that the Second Restatement of Torts makes no reference to contributory negligence being a factor in regard to tortious misrepresentation. Prosser & Keeton, Torts sec. 108, at 750-53 (5th ed 1984); see also Restatement (Second) of Torts sec. 538(2)(b) (1977).

Clearly, the conduct of plaintiffs here in making no further investigation after being dissuaded from looking at the attic was less than the entering into a transaction with their eyes closed to available information which the court in *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89, deemed to be the type of conduct which precluded bringing an action for misrepresentation.

I would affirm the judgment of the trial court.