VICKIE D. SWISHER *et al.*, Plaintiffs-Appellants, v. DOROTHY L. JANES, Defendant-Appellee and Third-Party Plaintiff (Bruce E. Maxwell *et al.*, Defendants; Paul L. Swisher *et al.*, Third-Party Defendants).—PAUL L. SWISHER, Plaintiff-Appellant, v. DOROTHY L. JANES, Defendant-Appellee and Third-Party Plaintiff (Bruce E. Maxwell *et al.*, Defendants; William Bruce Trimble *et al.*, Third-Party Defendants).

*Fourth District*   Nos. 4—92—0165, 4—92—0199 cons.

Opinion filed December 31, 1992.—Modified on denial of rehearing February 4, 1993.

Brent D. Holmes, of Heller, Holmes & Associates, P.C., of Mattoon, for appellants Vickie D. Swisher and Agnes V. Swisher.

Ralph D. Glenn and James R. Glenn, both of Glenn & Logue, of Mattoon, for appellant Paul L. Swisher.

Dale A. Cini and Christopher A. Koester, both of Ryan, Cini, Bennett & Radloff, of Mattoon, for appellee.

JUSTICE COOK delivered the opinion of the court:

This consolidated appeal arises out of an action to recover damages for injuries received on August 23, 1988, when propane gas apparently escaped from an uncapped pipe and exploded, injuring plaintiffs Vickie D. Swisher, Agnes Swisher, and Paul Swisher. Plaintiffs allege their injuries were caused by defendants Dorothy L. Janes, Bruce E. Maxwell, and/or Ronald E. Rodgers. The trial court granted Dorothy's motion for summary judgment and entered an order in accordance with Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) finding no just reason to delay enforcement or appeal. Vickie, Agnes, and Paul filed timely appeals. We affirm.

The record indicates that in 1973 Dorothy L. Janes and her husband purchased real estate at Rural Route 2, Toledo, Illinois. When they moved into the home it was served by a large propane tank on the property. Dorothy recalled the propane system served the kitchen stove, hot water heater, and the furnace. While living at the house in Toledo, Dorothy had an electric washer and dryer hooked up in the bathroom. In 1977-78 Dorothy was divorced from her husband, and he has since died. Dorothy has not remarried.

In 1984 Dorothy moved out of the house and sold it on contract to Bruce and Reita Maxwell. Bruce recalled Dorothy telling him, when he was looking at the house before moving in, that he could hook up his gas dryer in the bathroom. Dorothy did not remember making such a statement and denied that she ever knew the house had a hookup for a gas or propane dryer. The Maxwells lived in the house from 1984 until July 1, 1988. Bruce Maxwell recalled that the propane tank outside the house served the furnace, the stove, the water

heater, and the washer and dryer. After moving in the Maxwells had their gas dryer converted to propane, and Don Shoot came to the house to install the dryer in the bathroom. In 1988 the Maxwells decided not to fulfill the contract terms; they moved out of the house and the property was returned to Dorothy on July 1, 1988. When the Maxwells moved out they took their appliances with them. Bruce Maxwell and his brother-in-law, Ronald Rodgers, unhooked the dryer from the pipe in the bathroom and turned the propane off at the tank. They left the pipe in the bathroom uncapped because there was no cap available to put on the exposed pipe and there was no shut off valve for the exposed end.

After Bruce and Reita Maxwell moved out, Dorothy put an advertisement in the newspaper to sell the property. Dorothy vacuumed the house, but other than that had no reason to go inside of the house because it was left in good condition. Dorothy left the utilities on at the house and did not do anything with the propane. Vickie Swisher and William Bruce Trimble responded to the advertisement. Dorothy showed the house to Trimble, and Dorothy's daughter showed the house to Vickie. Vickie and Trimble each inspected the inside and the outside of the house. Dorothy testified she did not show the exposed propane pipe in the bathroom to Trimble and did not mention the pipe to Vickie, because she did not know about the pipe. Vickie recalled that Dorothy showed the house to her and her parents, Agnes and Paul Swisher, but she does not recall Dorothy mentioning anything about the propane pipe in the bathroom, and Vickie did not recall seeing the pipe.

The day after seeing the property with her parents Vickie talked to Trimble, and they decided to put earnest money down on the house. They called Dorothy and delivered $250 to her as earnest money. On August 2, 1988, Vickie and Trimble applied for a home loan through the First National Bank of Mattoon. During the first part of August 1988 Vickie and her father again walked through the house, this time with the appraiser. Dorothy did not recall going in the house with Vickie and her father on that occasion, but she recalled bringing the key to the house to let them in.

In negotiating the contract for sale of the property Vickie and Trimble were represented by an attorney, Ralph Glenn; Dorothy was also represented by an attorney, Janett Winter-Black. During negotiations Winter-Black refused to allow the addition of a clause warranting that all equipment was in good condition, instead opting for language that all equipment was accepted " 'as is.' "

Andrew Zavarella, assistant vice-president in the loan department at the First National Bank of Mattoon, handled the negotiations for the sale of the property. It was agreed by the parties that the closing would be held on August 23, 1988. Because it was not convenient or feasible for all parties to assemble on the closing date, the warranty deed was prepared on August 19, 1988, and signed by Dorothy the same day. On August 20 or 21 Vickie and Trimble contacted Dorothy to get a key to the property so that they could start cleaning. Dorothy would not give them the key or permit them to go inside; therefore, Vickie and Trimble spent the weekend working on the yard at the property.

Zavarella contacted Winter-Black on Monday, August 22, and requested that she send the warranty deed to the bank so he would have it for the closing on the next day. The closing took place the next morning, Tuesday, August 23. At the closing Zavarella and the purchasers were present, but Dorothy and Winter-Black were not. At the closing the buyers signed the contract to purchase the property, signed a note for the loan, executed a mortgage in favor of the First National Bank, and issued a check to First National Bank for $5,085.55 to cover expenses and the balance of the proceeds to Dorothy. According to Zavarella he met with the purchasers at closing to finalize the sale. He brought the deed signed by Dorothy to the closing, and held it after the closing as agent for the buyers. The signed warranty deed, abstract, and mortgage were delivered to Landmark Title on August 23. It was anticipated that the title company would pick up from Winter-Black's office a signed quitclaim deed from the Maxwells to Dorothy so the title company could take all of the paperwork to record the deed and perfect title on August 24. Vickie recalled that when she signed the contract for sale, it had not yet been signed by Dorothy. Dorothy did not recall when she signed the contract or who signed the contract first. The contract admitted as an exhibit was signed by Vickie, Trimble, and Dorothy, and was dated August 23, 1988.

After the closing Vickie called Dorothy from work and made arrangements to pick up the keys to the house. After work Vickie stopped by Dorothy's house and got the keys; Vickie recalled that Dorothy told her that Dorothy had not yet signed all the paperwork regarding the house. Vickie then met her parents and the three of them drove to Rural Route 2 to clean the inside of the house. Vickie's dad, Paul, then turned on the propane at the tank. They went back inside the house and Paul lit the stove and oven. Then they went into the main bathroom to light the water heater so they could clean the

house with hot water. When Paul attempted to light the pilot light for the water heater, an explosion occurred knocking Vickie to the floor and burning Vickie, Paul, and Agnes. Plaintiffs allege the explosion resulted from propane gas which had been released into the bathroom from the uncapped dryer hookup. As a result of the explosion, Paul was burned on his face and arms, Agnes was burned on her face, arms, and legs, and Vickie was burned on her left hand, her right arm, and her legs. All three were hospitalized and participated in physical therapy. Vickie stated that while all three had burns that were quite painful at first, the burns had healed quite well.

On August 24, 1988, the quitclaim deed was signed by Reita and Bruce Maxwell, conveying all their rights to the property to Dorothy. Although the settlement statement was signed by Trimble and Vickie on August 23, and dated August 23, Zavarella recalled that Dorothy did not sign the settlement statement until August 24. Dorothy kept her homeowner's insurance on the property until August 24, 1988. Vickie claimed the first time she saw the signed sales contract was sometime after the explosion when she received the contract in the mail from Winter-Black. The full proceeds from the sale were not disbursed to Dorothy until August 24. In addition, the deed was not recorded until August 24.

In her motion for summary judgment Dorothy alleged (1) the evidence established she owed no duty to plaintiffs because she was no longer owner of the property as a valid, properly executed, warranty deed had been delivered to the new owners, Vickie and Trimble; and (2) as the vendor of real property she owed no duty to plaintiffs because she did not know of, nor have reason to know of, any dangerous condition at the property. The trial court granted Dorothy's motions for summary judgment as to all the counts in Vickie and Agnes Swisher's complaint against her and as to both the counts in Paul Swisher's complaint against her.

The sole issue on this appeal is whether summary judgment was correctly entered as a matter of law. A motion for summary judgment should be granted when the pleadings, depositions, and affidavits reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 411, 583 N.E.2d 538, 541; see Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) In reviewing the trial court's granting of defendant's motion for summary judgment, this court's role is to consider anew the facts and law related to the case to determine whether the trial court was correct. (*Gresham v. Kirby* (1992), 229 Ill. App. 3d 952, 955, 595 N.E.2d 201, 203; *Shull*

*v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167.) In an action for negligence, plaintiff must set out sufficient facts establishing a duty owed by defendant to plaintiff, a breach of that duty, and an injury proximately resulting from the breach. *Vesey*, 145 Ill. 2d at 411, 583 N.E.2d at 541; *Rowe v. State Bank* (1988), 125 Ill. 2d 203, 215, 531 N.E.2d 1358, 1364.

■■ Plaintiffs argue that summary judgment was improperly granted because the evidence showed that at the time of the explosion Dorothy was still the owner of the property, and as the owner she owed a duty of care to plaintiffs. The duty owed by an owner or occupier of any premises to an invitee or licensee is that of "reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." (Ill. Rev. Stat. 1991, ch. 80, par. 302.) However, because the premises were being sold in this case, the rule of nonliability in section 352 of the Restatement (Second) of Torts (Restatement) is relevant; it provides as follows:

"Except as stated in §353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land *after the vendee has taken possession* by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession." (Emphasis added.) (Restatement (Second) of Torts §352, at 234 (1965).)

Sections 352 and 353 of the Restatement (Restatement (Second) of Torts §353 (1965)) have both been adopted as the law in Illinois. (See *Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491, 494, 322 N.E.2d 5, 7; *Century Display Manufacturing Corp. v. D.R. Wager Construction Co.* (1978), 71 Ill. 2d 428, 433, 376 N.E.2d 993, 995; *Rowe*, 125 Ill. 2d at 228-29, 531 N.E.2d at 1370.) As a general rule, a grantor or vendor of real property is not liable for personal injury sustained by the vendee or other third persons on the premises subsequent to the vendee taking possession of the property. Therefore, in order to determine the duty of care owed by Dorothy in this case, we must determine when Dorothy relinquished possession.

■■ The vendor of real property who parts with title, possession, and control of the property ceases to be an owner. (W. Keeton, Prosser & Keeton on Torts §64, at 446 (5th ed. 1984).) Even if title had not passed, and Dorothy was the owner of the property at the time of the accident, plaintiffs have not refuted the evidence that they had possession. The fact that Dorothy gave the keys to Vickie after the closing is persuasive in showing intent to deliver possession to Vickie and Trimble, because Dorothy had just a few days earlier refused to give the keys to Vickie when Vickie asked if she could

clean the inside of the house. After Vickie picked up the keys from Dorothy, she went over to the house with her parents and began to clean. Plaintiffs have presented no evidence tending to show that they were not in possession of the property when they were injured. It is, therefore, undisputed that Vickie and Trimble acquired possession on August 23, 1988, prior to the explosion at the house. Dorothy did not owe a duty as an owner or occupier (Ill. Rev. Stat. 1989, ch. 80, par. 302), but did owe a duty as a vendor of land. As a vendor Dorothy owed a limited duty to plaintiffs as defined by sections 352 and 353 of the Restatement.

■ The next step is to determine whether Dorothy breached the duty owed to plaintiffs. (See *Sparrow v. Talman Home Federal Savings & Loan Association* (1992), 227 Ill. App. 3d 848, 854, 592 N.E.2d 363, 367 ("Notwithstanding the existence of a legal duty, however, we hold that the trial court properly entered the directed verdict in favor of defendant" based on a finding that defendant had not breached this duty); *Vesey*, 145 Ill. 2d at 411, 583 N.E.2d at 541; *Rowe*, 125 Ill. 2d at 215, 531 N.E.2d at 1364.) The general rule of vendor nonliability in section 352 of the Restatement is subject to the following exception in section 353:

"(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk." (Restatement (Second) of Torts §353, at 235 (1965).)

As adopted by the supreme court, section 353 of the Restatement does not require actual knowledge of the condition in order to impose liability on the vendor of the property; constructive knowledge is sufficient. It is enough that the vendor has information from which a person of reasonable intelligence would infer a condition exists involving an unreasonable risk of physical harm to persons on the land. Restatement (Second) of Torts §353, Comment *c*, at 236 (1965); *Sparling*, 59 Ill. 2d at 497, 322 N.E.2d at 8-9.

The section 353 exception to the general rule of nonliability is not applicable unless the four conditions set out in section 353 are satisfied. For plaintiffs to recover in this case they must show that Dorothy breached the duty owed to them by establishing that (1) the vendees did not know or have reason to know of the condition or risk involved; (2) Dorothy knew or had reason to know of the condition which involved unreasonable risk to persons on the land; (3) Dorothy realized or should have realized the risk involved; and (4) Dorothy had reason to believe the purchasers would not discover the condition or realize the risk. See Restatement (Second) of Torts §353, at 235 (1965).

■■ With regard to the first element pertaining to the buyers' knowledge of the risk involved, plaintiffs state it was uncontradicted that they did not know, or have reason to know, of the condition or risk involved. While it is true that there is no indication in the record that plaintiffs had actual knowledge of the uncapped propane pipe, the record is clear that the vendees, Vickie and Trimble, inspected the home on at least two occasions prior to the accident. Further, Vickie and Trimble could have retained a professional to inspect the home; instead they negotiated through their attorney to purchase the house and property " 'as is.' " While conveyance of the property " 'as is' " is not sufficient to exculpate the vendor and to justify the entry of the summary judgment order for Dorothy, it is an important factor in determining whether the exception created by section 353 to the general rule of nonliability of the vendor is applicable. (*Century Display*, 71 Ill. 2d at 436-37, 376 N.E.2d at 997.) The buyers chose to light the propane appliances themselves, without any assistance from Dorothy, or a professional. Therefore, although the facts support the buyers' contention that they did not know of the dangerous condition, under the facts of this case they had reason to know of the danger.

With regard to section 353's second element, pertaining to Dorothy's knowledge of the condition, Dorothy denies knowing anything about the pipe and claims she never knew that the house had a hookup for a propane dryer. Although defendants contend this is not true based on Bruce Maxwell's testimony that Dorothy told him he could hook up a gas dryer in the bathroom, this is the only evidence plaintiff presented to prove Dorothy's knowledge of the pipe.

With regard to the third element plaintiffs contend that Dorothy should have known of the risk involved in having an uncapped propane pipe in the bathroom. Plaintiffs contend that Dorothy should have realized that having an uncapped propane pipe was an unreasonable risk. They claim that this situation was particularly unreasonable

because anyone could have turned the propane on from outside of the house and caused the gas to leak in the bathroom. The problems with this contention are (1) Vickie's dad knowingly turned on the propane at the tank; it was not turned on accidentally or by some intervenor; and (2) the overwhelming evidence shows Dorothy never knew there was an uncapped propane pipe in the bathroom. Dorothy stated that when she was living at the house she had an electric washer and dryer. It is not clear that Dorothy should have known of the danger of the uncapped pipe in the bathroom since the evidence showed that Dorothy had never used the pipe, lit the pilot light in the bathroom, or adjusted the propane switch at the tank.

The last condition is whether Dorothy had reason to believe the purchasers would not discover the condition or realize the risk. This condition, like the second condition, revolves around whether Dorothy knew about the uncapped and exposed pipe. Dorothy contends she did not.

The moving party is entitled to a summary judgment as a matter of law where the nonmoving party has failed to make a sufficient showing on an essential element of the case for which the nonmoving party had the burden of proof. (*Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323, 91 L. Ed. 2d 265, 273, 106 S. Ct. 2548, 2552; Schwarzer, Hirsch & Barrans, *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441, 479 (1991) ("Once the movant makes a properly supported motion, the burden shifts to the nonmovant to demonstrate the existence of a genuine dispute").) In this case plaintiffs may not resist a motion for summary judgment, on an issue for which they have the burden of proof, by arguing that it is up to movant to negate their case. (*Benner v. Bell* (1992), 236 Ill. App. 3d 761, 769, 602 N.E.2d 896, 901; *Webber v. Armstrong World Industries, Inc.* (1992), 235 Ill. App. 3d 790, 795-96, 601 N.E.2d 286, 290; *Gresham,* 229 Ill. App. 3d at 954, 595 N.E.2d at 203; *Celotex,* 477 U.S. at 325, 91 L. Ed. 2d at 275, 106 S. Ct. at 2554; *West v. Deere & Co.* (1991), 145 Ill. 2d 177, 182, 582 N.E.2d 685, 687-88.) Plaintiff's failure to satisfy the conditions from section 353 of the Restatement compels the conclusion that Dorothy is not liable to plaintiffs as a matter of law. Dorothy Janes is a 72-year-old divorcee, who relied on her former husband to take care of much of the maintenance around the property in question when they lived there. Dorothy stated she had an electric dryer and did not know there was a pipe to hook up a propane dryer. The facts showed that she did not know about this exposed pipe, did not know about any dangerous condition in the bathroom, and did not have any reason to know about these hazards.

Even if she would have seen the pipe in the bathroom when she was in the house after the Maxwells moved out and before Vickie and Trimble moved in, it would not have been unreasonable for her to believe that it was a safe and common appliance hookup.

The only evidence tending to show that Dorothy may have known there was a hookup for a propane washer and dryer in the utility room is the statement made by Bruce Maxwell in his deposition regarding what Dorothy told him when she was showing the house to him in 1984:

"Q. [Brent Holmes:] Did you have any conversation with Mrs. Janes about whether you could use your gas dryer there?

A. [Bruce Maxwell:] Yeah. Just basically that: Was the house set up so we could use a gas dryer since we didn't have an electric one.

Q. And what did she say?

A. Yes, it was.

Q. Did she show you around where the appliances would be located?

A. Yeah, she showed us where the washer and dryer would set, which was in a space created just for that off the first bathroom.

Q. And was there a—I guess a pipe gas or propane pipe there that you can use to hook up your gas dryer?

A. Yeah. There was a pipe coming up out of the floor.

Q. And she showed you that?

A. Told us it was there. Her appliances were—. Both times we looked at the house she was still living there.

Q. Do you recall what appliances she had, whether—for her clothes dryer, whether it was electric or propane?

A. I honestly don't recall what she had in there.

Q. Okay. But you are indicating that when she showed you this utility room area she did point out that you could hook up your gas dryer there?

A. Yeah. We specifically asked because we had just bought the washer and dryer new prior to moving out there from Gamble's here in town. So we didn't want to turn around and not use the brand new dryer we bought.

Q. And she told you there was a hook up [sic] there?

A. Yeah, said there was a hook up [sic] there."

While Dorothy as vendor owed a duty to the vendee (see Restatement (Second) of Torts §§352, 353 (1965)), Dorothy has not breached any duty owed to plaintiffs. Plaintiffs argue that Bruce Maxwell's

statements raise an issue of credibility which should be decided by the trier of fact. Bruce Maxwell's statements, and the issue of his credibility, simply raise a question as to whether Dorothy may have known there was a propane hookup in the bathroom in 1984. His testimony does not indicate that the exposed propane pipe was uncapped or dangerous in 1984. Furthermore, his testimony does not indicate that Dorothy knew or had any reason to know the pipe was left uncapped when the Maxwells eventually moved out of the house. Plaintiffs have presented a mere scintilla of evidence tending to show that Dorothy breached a duty owed to plaintiffs but that is not enough evidence to defeat a summary judgment. (*Benner*, 236 Ill. App. 3d at 768, 602 N.E.2d at 901.) Even if the trier of fact were to believe the statements made by Bruce Maxwell, there has been no showing in this case that Dorothy breached a duty owed to plaintiffs. Therefore, the trier of fact could not find a breach of duty by Dorothy, and summary judgment is appropriate. See *Vesey*, 145 Ill. 2d at 411, 583 N.E.2d at 541; *Rowe*, 125 Ill. 2d at 215, 531 N.E.2d at 1364; *Benner*, 236 Ill. App. 3d at 764, 602 N.E.2d at 898.

Accordingly, we affirm the trial court's entry of summary judgment in favor of Dorothy Janes.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.