In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2888

TERRY TINDLE,

*Plaintiff-Appellant,*

*v.*

PULTE HOME CORPORATION, a Corporation, and
PULTE HOME CORPORATION, ILLINOIS DIVISION,[1]

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CV 566—**Blanche M. Manning**, *Judge.*

ARGUED JANUARY 20, 2010—DECIDED JUNE 9, 2010

Before FLAUM, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* Terry Tindle suffered serious
injuries when his foot and leg sank into a hole concealed
underneath the sod in the backyard of his new home. That

---

[1] Plaintiff sued Pulte Home Corporation, a Corporation, and
Pulte Home Corporation, Illinois Division. The correct (and
only) defendant should have been Pulte Home Corporation.

new home was built by Pulte Home Corporation. Tindle sued, and Pulte moved for summary judgment, arguing that Tindle failed to establish a triable issue on each of the five required elements for vendor liability under Restatement (Second) of Torts § 353 (1965). The district court granted Pulte's motion, and we affirm.

## I. BACKGROUND

The facts are relatively undisputed. Pulte Home Corporation purchased land in West Dundee, Illinois, and developed it into a residential neighborhood known as Carrington Reserves Subdivision. The subdivision was divided into three sections: the Enclave, the Timbers, and the Valleys. Terry and Diane Tindle's home is located in the Timbers. Pulte hired third parties to perform soil exploration and testing and to grade and level the land prior to construction. All of the land, including the section that would eventually include the Tindles' property, met or exceeded the minimum soil compaction and bearing capacity standards. However, at some point Pulte received complaints from several homeowners in the Valleys about flooding, and it was determined that a tract including eight homes had been improperly graded.

Pulte placed sod on the soil in the Tindles' yard prior to them moving into their home in December 2003. Shortly after moving in, the Tindles noticed holes developing in the front yard near the driveway and in the back near a drain. The Tindles' neighbors told Mrs. Tindle that they had also noticed holes on their property. The Tindles requested that Pulte fix the holes near the drive-

way. A Pulte representative told Mrs. Tindle that the holes were "normal," but Pulte did repair most of the holes in and around the driveway in the spring.

Over the course of the seven months prior to Tindle's accident, the Tindles regularly watered their lawn and had it mowed. Tindle walked through his backyard at least five times before his accident. Mrs. Tindle also walked through the backyard and went there to clean up after the family dog. In July 2004, while walking through his backyard, Tindle's foot and leg sank through the sod into a concealed hole. He fell, seriously injuring his leg. Sometime after the accident Mrs. Tindle marked with flags and photographed several areas in her backyard that she believed were holes or depressions. However, the Tindles were never able to identify the specific hole into which Tindle fell.

Tindle brought this suit, arguing that Pulte was negligent in causing his injuries. The district court granted Pulte's motion for summary judgment, and this appeal followed.

## II. ANALYSIS

We review the district court's grant of summary judgment *de novo*. *Budde v. Kane County Forest Preserve*, 597 F.3d 860, 862 (7th Cir. 2010). Because Tindle is the non-moving party, we will draw all reasonable inferences from the evidence in his favor. *Id.* We are not required, however, to draw *unreasonable* inferences in his favor, *St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n.2 (7th Cir. 1997), and Tindle must come forward

with admissible evidence that demonstrates there are genuine issues of material fact to survive Pulte's summary judgment motion, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994).

The parties agree that Illinois law governs their dispute. In Illinois, "an ordinary vendor of real property is not liable for personal injuries which are sustained subsequent to his transfer of possession and control." *Anderson v. Cosmopolitan Nat'l Bank of Chicago*, 301 N.E.2d 296, 298 (Ill. 1973); *see also* Restatement (Second) of Torts § 352. But Illinois has adopted § 353 of the Restatement (Second) of Torts, which provides an exception to the general rule of non-liability:

> To state a claim under section 353, plaintiff-purchaser must sufficiently allege that (1) defendant-vendor concealed or failed to disclose a condition which, prior to the sale, created an unreasonable risk to persons on the land; (2) the defendant knew or had reason to know of the condition and realized or should have realized the risk involved; (3) that defendant had reason to believe that plaintiff would not discover the condition; (4) that the condition caused physical harm, after plaintiff took possession but before plaintiff knew or had reason to know of the condition and the risk involved; and (5) before plaintiff had an opportunity to take precautions to prevent the injury.

*Heider v. Leewards Creative Crafts, Inc.*, 613 N.E.2d 805, 817 (Ill. App. Ct. 1993).

The district court found that Tindle failed to produce evidence to support each of the required elements to sustain a claim under § 353. (App. at 4.) The district court discussed by way of example Tindle's shortcomings regarding whether Pulte knew or should have known of the dangerous condition at the time of the sale and whether Pulte had reason to believe Tindle would not discover the condition. (*Id.* at 4-5.) We agree with the district court that Pulte is entitled to summary judgment, both because of what Tindle knew and what Pulte did not.

### A. What Tindle Knew

Tindle's theory of liability seems to be not that Pulte knew of the specific hole that caused his injury, or even that there were holes in the Tindles' backyard. Instead, Tindle argues that Pulte knew or should have known of "a pervasive and systematic problem with the soil that manifested itself in holes that Pulte covered with sod." (Appellant's Br. at 11.) Assuming without deciding that Tindle's soil-problem theory could legally lead to liability, Tindle's theory falls short because he ignores the fact that *his* knowledge of the dangerous condition—here, holes in the soil—may defeat liability, just as Pulte's knowledge of the same problem could lead to it.

In *Regas v. Associated Radiologists, Ltd.*, 595 N.E.2d 1223 (Ill. App. Ct. 1992), the Illinois Appellate Court explained that under § 353, "a purchaser of property cannot shut his eyes to available information and then charge that he has been deceived. Thus, the vendor's liability may not be predicated on a defective condition of which the vendee

was aware." *Id.* at 1227 (citations and internal quotation marks omitted); *see also Lake v. United States*, 522 F. Supp. 166, 168 (N.D. Ill. 1981) ("[I]n order for the vendor to remain responsible for hazardous conditions not revealed to the vendee, the condition must have been one that the vendee did not know or have reason to know existed."). The uncontroverted evidence is that the Tindles knew, or certainly were placed on notice of the possibility, that there could be holes in their yard and that those holes might cause an injury.

The evidence that Tindle suggests demonstrates Pulte's knowledge of the "pervasive and systemic problem with the soil" is the same evidence that demonstrates his own knowledge of the condition. The Tindles themselves noticed sink holes developing near and in their driveway within one month of moving into their home. Tindle also submitted evidence that there were holes on their neighbors' property and on other lots down the street. However, the only evidence that is properly before the court is of the holes on the Tindles' property. The evidence of the holes on the neighbors' property and in other parts of the subdivision comes from Mrs. Tindle's testimony about conversations she had with the neighbors and others. But what Mrs. Tindle says the neighbors said is inadmissible hearsay, and Tindle cannot rely on it to overcome summary judgment. *Gunville v. Walker*, 583 F.3d at 985.

Even were we to consider Mrs. Tindle's testimony about the conversations with her neighbors, it only shows that the Tindles were further put on notice that there

might be a problem with holes on their property. Tindle also knew that the sink holes could cause personal injury—that is, he understood the risk of the holes—because one of the holes had previously caused Mrs. Tindle to fall. That the specific hole into which he fell was covered by sod does not eliminate his knowledge of the *risk* of holes being found in his backyard. His knowledge of the risk is fatal to his claim.

In *Lake*, 522 F. Supp. at 167, the plaintiff's daughter was injured when she fell from a porch of a house that the United States, through the Department of Housing and Urban Development, had sold to another individual. The court granted summary judgment to the government because the plaintiff failed to produce evidence that the individual purchaser did not know of the dangerous condition of the porch. *Id.* at 169. Important to its decision was the fact that "the hazardous condition which caused the injury should have been fully apparent from a simple visual inspection of the property as it was observable and photographable from the outside of the house," and the purchaser had made multiple inspections of the property. *Id.* at 168. Thus, the government, as the vendor, could not be held responsible for a condition of which the purchaser should have been aware. *Id.* at 168-69.

Similarly, in *Regas*, 595 N.E.2d at 1223, the court granted summary judgment to the vendors. There, the plaintiff complained that the defendant had failed to disclose extensive water damage. The court found that the plaintiff had been put on notice of the potential for water damage because he had personally observed water-

leakage-related problems, albeit not to the full extent of the damage. *Id.* at 1228. The court also noted that the water leak problem was "visible and obvious." *Id.*

Finally, *Swisher v. Janes*, 606 N.E.2d 798 (Ill. App. Ct. 1992), demonstrates how narrow the exception to the general rule of non-liability is in Illinois. The plaintiffs in *Swisher* purchased a home that had an uncapped propane pipe in the bathroom. Within hours of closing on the purchase, plaintiffs were injured in an explosion that occurred when they attempted to light the pilot light on the water heater. *Id.* at 799-801. There was no evidence that the plaintiffs actually knew of the uncapped pipe and risk of explosion. *Id.* at 803. However, the court found that they had reason to know of the risk because they had twice inspected the home, they could have but did not hire a professional to inspect the home, and they attempted to light the pilot light themselves rather than seek professional help. *Id.* Under those circumstances, the court held that the plaintiffs had reason to know of the danger. Accordingly, their action under § 353 failed as a matter of law. *Id.*

Like the plaintiffs in *Lake*, *Regas*, and *Swisher*, Tindle had reason to know of the dangerous condition that eventually caused his injuries. The Tindles had walked through their backyard at least five times. Mrs. Tindle went into the backyard weekly to clean up after the family dog. Even if the Tindles did not know about the holes in the backyard (that is, the full extent of the dangerous condition), they were certainly aware that there were holes in other parts of the property. The holes in the

backyard here were visible, as Mrs. Tindle was able to locate and photograph numerous holes after her husband was injured. Surely the Tindles had more reason to know of the dangerous condition on their property than did the plaintiffs in *Swisher*.

Tindle argues, however, that the facts of *Sparling v. Peabody Coal Co.*, 322 N.E.2d 5 (Ill. 1974), are more analogous to his case. In *Sparling*, the plaintiff's father purchased land that had previously housed a coal mine. A large pile of slack, or coal dust, remained on the property. The plaintiff was severely injured more than six years after the sale of the property to her father when she walked on top of the slack pile and fell into a fire that was burning at the bottom of the pile. *Id.* at 6-7. The court rejected the defendant's argument that the passage of more than six years was ample time for the father to discover and remedy the dangerous condition. *Id.* at 10. The court found that the question of whether the father should be deemed to have constructive knowledge of the risk was a question for the jury because the fire did not create smoke or steam, the father rarely went near the pile, and he did not use the land near the pile or have reason to go near it. *Id.*

Tindle's case is readily distinguishable from the facts of *Sparling*. As discussed above, Tindle knew of sink holes on other parts of his property and perhaps on his neighbors' lots. He frequented his backyard, or at the very least had more occasion to walk through his backyard than the plaintiff in *Sparling* had to go near the slack pile. Thus, because Tindle knew or had reason to know the

condition and risk involved, summary judgment on his § 353 claim must be granted.

### B. *What Pulte Knew*

Tindle's claim also falls short because he has failed to produce evidence that Pulte knew or had reason to know of the dangerous condition at the time of the sale. Tindle argues that he has presented numerous pieces of evidence sufficient to raise a jury question about what Pulte knew. This evidence includes: (1) the presence of holes on Tindle's, his neighbors', and others' property; (2) the improperly graded land in another part of the subdivision; (3) the development's location on and near wetlands; (4) Pulte's acknowledgment that building next to a wetland raised erosion issues; (5) differing compaction levels in the yard and under the foundation; (6) Pulte's covering the yard with sod; and (7) Pulte's explanation that the holes in the Tindles' yard were caused by normal settling. None of this evidence, however, genuinely raises the issue of whether Pulte knew of the allegedly dangerous condition at the time of the sale.

As noted earlier, Tindle cannot rely on the inadmissible hearsay evidence of the holes developing in his neighbors' property to defeat summary judgment. Tindle points to evidence of a sink hole at Holly Anderson's property, but the only evidence regarding that hole is that it was caused by a sprinkler leak, not by the alleged soil problem. The sink hole at Ms. Anderson's property, therefore, cannot be used to impute knowledge of the risk of sink holes on Tindle's property. Nor can the fact that other

parts of the development were once improperly graded. Tindle makes no attempt to connect the improper grading of eight home sites in a separate part of the subdivision to the soil condition that caused the hole in his backyard; nor does Tindle appear to argue that it was a grading problem that caused the hole that injured him.

Equally unhelpful to Tindle is the fact that Pulte built Tindle's neighborhood on and near wetlands. Tindle himself acknowledges that "Pulte avoided the wetlands by building houses only on the high grounds that existed, or that they created, around the wetlands." (Appellant's Br. at 5.) And although Tindle likely wishes that Pulte had acknowledged erosion issues in the neighborhood because of the wetlands, (*see* Appellant's Br. at 11), in reality Pulte merely acknowledged that erosion is a concern any time one builds in a wetland area. Further, absent some evidence that the yard was not compacted *enough*, the fact that the soil in the yard was compacted less than the soil under the foundation does not establish that Pulte knew of a dangerous condition when it sold the house to Tindle. To the contrary, the evidence suggests that the soil compaction on the Tindles' property met or exceeded the applicable standards.

Because we cannot reasonably infer from the evidence that Pulte had any reason to know of the alleged soil problem in the Tindles' yard prior to the their purchase of the property, the fact that Pulte laid sod down on top of the soil in the yard tells us little. Based on the evidence before us, it would be unreasonable to infer some sort of nefarious purpose on Pulte's part in laying the sod.

Even if the sod did conceal a dangerous condition, there is no evidence properly before the court that Pulte knew or had reason to know of that dangerous condition.

Finally, Tindle argues that because Pulte told him the holes in his front yard were the result of normal settling, the court should allow a jury to consider his § 353 case. To the extent that Tindle argues that Pulte telling him that it was normal settling eliminated *his* knowledge of the dangerous condition or his duty to investigate, he is mistaken. *See, e.g.*, *Regas*, 595 N.E.2d at 1228 ("Plaintiff's testimony stating that he did not know the cause of the leak does not erase his awareness of the problem."); *Smith v. Ethell*, 494 N.E.2d 864, 865-66 (Ill. App. Ct. 1986) (barring the plaintiffs, who had noticed some water damage in the ceiling, from cancelling the contract even though the defendants told the plaintiffs that the roof was in good condition and that there was no need to inspect the attic). He is also wrong to the extent that he is arguing that this evidence shows Pulte knew of a dangerous condition *before* the sale of the property to Tindle.

That Tindle has failed to produce evidence that Pulte knew or should have known of a dangerous condition that created an unreasonable risk prior to the transfer of property further demonstrates that Pulte is entitled to summary judgment.

## III. CONCLUSION

Tindle has failed to adequately raise a question for the jury on each of the required elements of his claim under

Restatement (Second) of Torts § 353. The district court's grant of summary judgment is therefore AFFIRMED.